[Civ. No. 46457. First Dist., Div. Two. Nov. 22, 1982.]

In re the Marriage of JANE and EDWIN H. BEHRENS.
JANE BEHRENS, Appellant, v.
EDWIN H. BEHRENS, Appellant;
HUNT & BEHRENS, INC., Respondent.

[Civ. No. 47993. First Dist., Div. Two. Nov. 22, 1982.]

In re the Marriage of JANE and EDWIN H. BEHRENS
JANE BEHRENS, Appellant, v.
EDWIN H. BEHRENS, Respondent;
HUNT & BEHRENS, INC., Respondent.

564

566

---

**COUNSEL**

Siegfried D. Hesse, Robert P. Brorby, Dodge, Reyes, Brorby, Randall & Titmus, Verna Adams and Savitt & Adams for Appellant Wife.

James Wisner, Robert C. Schubert and Bancroft, Avery & McAlister for Appellant and Respondent Husband.

Albert Bianchi and Bianchi, Hoskins & Rosenberg for Respondent Hunt & Behrens, Inc.

---

**OPINION**

**ROUSE, J.**—Jane Behrens (Wife) petitioned for dissolution of her 29-year marriage to Edwin H. Behrens (Husband). There were no minor children, and

the issue of dissolution itself was ultimately bifurcated and adjudicated without appeal. The other issues at trial were spousal support, property characterization and division, and attorney fees and costs. From the judgment purporting to dispose of these issues Wife appeals and Husband cross-appeals. The parties have briefed and argued multiple contentions vigorously and at length. We conclude that the judgment should be modified to reduce the amount due from Husband to Wife upon division of the community property and that, as so modified, the judgment should be affirmed. We dismiss Wife's second appeal, from a postjudgment order, which was consolidated with the primary appeals and which she has essentially abandoned.

We discuss the relevant facts and proceedings in connection with the issues to which they relate.

### Findings

The trial was conducted in January 1977, and the trial court filed its notice of intended decision in July 1977. Wife made timely requests for findings. The court and counsel worked on findings over a period of several months. On March 21, 1978, the court filed a two-page "minute order" with lengthy attachments which on its face synthesized competing requests for findings. By marks and handwritten revisions made directly on copies of the parties' requests, the trial court adopted some findings, modified others, and rejected many on both sides. At Husband's request the court then held another hearing and invited further briefing. After briefing, on May 24, 1978, the trial court filed an "order re property division, spousal support, restraining orders and attorney's fees" which was obviously intended and subsequently treated as a final judgment on all issues other than the previously adjudicated question of dissolution itself. It is from this order that the primary appeals were taken. The order is essentially consistent with the March 21 documents; the trial court never signed any other form of findings.

■ In the circumstances of record and under the law as it existed at the time of trial, Wife was entitled to findings of fact which would "fairly disclose the court's determination of all issues of fact in the case." (Former Code Civ. Proc., § 632 [request for findings; subsequently amended to replace findings and conclusions with a "statement of decision" procedure (Stats. 1981, ch. 900, § 1)]; cf. 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, §§ 337-338, pp. 3139-3140; cf. also Code Civ. Proc., § 631.8 [motion for judgment granted]; In re Marriage of Tammen (1976) 63 Cal.App.3d 927, 930 [134 Cal.Rptr. 161] [division of community property]; rule 232, Cal. Rules of Court [subsequently amended in 1982].) In general, a failure to make required findings was reversible error. (Cf. 4 Witkin, op. cit. supra.)

■ Wife now contends that the court did not make findings. We disagree. The March 21 minute order was signed by the trial judge; with its attachments it reflected detailed consideration and disposition of the contentions of the parties. Quite properly omitting evidentiary and conclusionary matters proposed by the parties, the court adequately dealt with all the material issues before it. Wife complains particularly of the asserted failure of the trial court to make findings with respect to various shareholder agreements relevant to transferability of 918 shares of common stock of Hunt & Behrens, Inc., a close-held corporation. Contrary to Wife's contention, the trial court did both make findings and state conclusions with respect to these agreements, although it is clear that the court did not go as far as Wife would have wished. It is apparent from the record that, having determined that the stock was community property and that the shares should be divided equally in kind, the trial court limited its findings and conclusions with respect to the agreements to those necessary to assure that Wife's position as a shareholder would be as nearly as possible comparable to Husband's. Findings as to contractual provisions which would, in any event, fall equally upon Wife and upon Husband would not be relevant to the issues in this dissolution action, and we approve the trial court's implicit decision not to delve further into the agreements. We consider the shares, and the agreements, further below.

Wife directs our attention to notations in the minute order to the effect that the marked-up copies are attached "for guidance in preparing and submitting new findings and conclusions." She claims that these notations demonstrate that the minute order and its attachments were not themselves intended to be findings or conclusions. But we deem this, and the fact that the court never signed Wife's new form of findings designed to incorporate the court's revisions, matters of form rather than of substance. The purpose of findings was to make a record of the trial court's view of the facts and law of the case, to facilitate posttrial motions and appeal. (Cf. *Frascona* v. *Los Angeles Ry. Corp.* (1920) 48 Cal.App. 135, 137 [191 P. 968].) In form the March 21 minute order, with its attachments, fully served this purpose. On May 24, after the hearing and further briefing, the trial judge signed and filed Wife's proposed form of judgment. The inference that the court thus reaffirmed the findings set forth in detail in the March 21 minute order is irresistible; Wife's implicit suggestion that a clean copy of the findings should have been signed and filed in May is hyper-technical.

In addition, we note that Wife's position here is contrary to that which she took in the trial court, where she repeatedly and unequivocally argued that the March 21 minute order constituted the requisite findings. In any event, we are disinclined to permit such a change of legal theory on appeal. (Cf., e.g., *Signal Hill Aviation Co.* v. *Stroppe* (1979) 96 Cal.App.3d 627, 638 [158 Cal.Rptr.

178]; 6 Witkin, Cal. Procedure (2d ed. 1971, pt. I) Appeal, § 281, p. 4269 et seq.)

### The Hunt & Behrens, Inc. Stock

The largest single item of community property was the block of common stock of Hunt & Behrens, Inc. The corporation produces and deals in feed and grain. The business was founded by Husband's father and another; Husband is a key employee of the corporation. The Hunt & Behrens stock had been made the subject of several agreements and draft agreements among some or all of the corporation and its shareholders. The most recent of these agreements, dated October 18, 1972, restricted shareholders' ability to sell their shares and would apparently have given the corporation, or any of its other shareholders an option to purchase any shares Wife might receive upon marital dissolution at a price fixed by discounting appraised value by 25 percent. The trial evidence and the pretrial estimates of the respective parties placed the value of the 918 shares at anywhere from less than $200,000 (taking into account the potential discount) to nearly $700,000 (without discount). There was evidence that Hunt & Behrens did not declare dividends on its shares but instead applied profits to employee compensation and to capital development. The 918 shares represented between 27 and 28 percent of the outstanding stock of the corporation. Husband was president and chairman of the board of directors; Wife had no position with the corporation. In light of its apparent power to repurchase any shares awarded to Wife, the corporation was joined as a party to the dissolution action.

After receiving evidence as to the value, transferability in light of the series of agreements, and tax ramifications of transactions in the shares, the trial court, in the course of trial, granted Husband's motion for judgment that the shares should be divided equally in kind. The order was conditioned upon waiver by the other shareholders of the discount provision. This in-kind division was carried into the May 24 order, which also "specifically restrains and enjoins [Husband] and claimant Corporation from attempting to purchase [Wife's] shares of stock at a 25% discount, as provided for in the . . . agreement dated October 18, 1972." The order did not purport to establish or to protect Wife's right to sell the shares awarded to her or to affect the rights of shareholders not parties to the dissolution action. It adequately appears, however, that all other shareholders have voluntarily waived any residual right any of them might have to purchase Wife's shares at discount.

Throughout the trial, Wife vigorously opposed in-kind division of the shares, asserting that such a division would leave her subject to the decisions of Husband and other shareholders in the management of the corporate business without protection or any means of realizing the value of her shares. She pro-

posed that Husband or the corporation be required to purchase her shares or, at least, that any restrictions applicable to her right to sell her shares be removed.

After her first notice of appeal was filed, however, Wife moved to compel transfer of her half of the stock (459 shares) to her. Husband took the position that this provision of the May 24 order was stayed pending appeal. The trial court ruled that there was no stay. Husband deposited the shares in court, and upon stipulation of the parties that (among other things) Wife's counsel "acknowledges receipt of, and accepts," the shares, the trial court ordered the shares released to Wife. Wife then sought to have the words "and accepts" deleted from the stipulation on the ground of "mistake and inadvertence." The trial court granted the motion on condition that Wife agree to add to the remaining acknowledgment the words "[a]s constituting full compliance by [Husband] and [the corporation] with" the pertinent provision of the May 24 order. Wife's second appeal was taken from the order conditionally granting her motion. ■ By way of opening brief in the second appeal, she has simply referred us to her brief on the primary appeals. She has not made clear how she believes herself to have been aggrieved by the trial court's order. (Code Civ. Proc., § 902.) For want of a showing by Wife of this essential element of appellate standing (cf. 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 118, p. 4117 et seq.), we deem her second appeal abandoned.

In the primary appeals, Wife renews her contention that in-kind division of the Hunt & Behrens shares is unfair to her and does not, in fact, effect an equal division of the community property. As alternatives, she proposes either that the corporation should be required to compel Husband to buy her shares or to redeem the shares itself, or that Husband should be assigned all of the shares and required to buy Wife out over time, or that all 918 shares should be sold as a block and the proceeds divided, or that Wife should be relieved of all restrictions on her right to sell her shares. In any event, Wife argues, she should receive "appropriate protective orders" until her half-interest is cashed out.

■ Initially, Husband argues that Wife has waived these contentions by insisting, after judgment, that the 459 shares be transferred to her. It is indeed difficult to reconcile Wife's tactics, but we are disinclined to find a waiver. The general rule that "a party cannot accept the benefits of a judgment, in whole or in part, and then attack it by appeal" (6 Witkin, Cal. Procedure (2d ed. 1971, pt. I) Appeal, § 136, p. 4131) should not apply where, as here, the appellant seeks substantial additional benefit on appeal. (Cf., *id.*, § 138, pp. 4134-4135.)

■ It is clear that trial courts have substantial discretion to make dispositions of the kinds Wife now proposes. (Cf., e.g., *In re Marriage of Fink* (1979) 25 Cal.3d 877, 885-886 [160 Cal.Rptr. 516, 603 P.2d 881]; *In re Marriage of Connolly* (1979) 23 Cal.3d 590, 603 [153 Cal.Rptr. 423, 591 P.2d 911]; *In re*

*Marriage of Lotz* (1981) 120 Cal.App.3d 379, 385 [174 Cal.Rptr. 618]; *In re Marriage of Emmett* (1980) 109 Cal.App.3d 753, 759 [169 Cal.Rptr. 473]; *In re Marriage of Bridgen* (1978) 80 Cal.App.3d 380, 389 [145 Cal.Rptr. 716].) But this does not establish that, in general, it would be an abuse of discretion to order in-kind division of close-held shares. Equal in-kind division remains the general rule (Civ. Code, § 4800, subd. (a)), subject to exception where (for pertinent example) "economic circumstances warrant" (Civ. Code, § 4800, subd. (b)(1)). (Cf. *In re Marriage of Bridgen, supra,* 80 Cal.App.3d 380, 390.) The determination whether "economic circumstances warrant" is, once again, entrusted to the sound discretion of the trial court. The issue for us is whether, in this action, the trial court abused its discretion. "Although precise definition is difficult, it is generally accepted that the appropriate test of abuse of discretion is whether or not the trial court exceeded the bounds of reason, all of the circumstances before it being considered." (*In re Marriage of Connolly, supra,* 23 Cal.3d 590, 598.)

■   We conclude that there was no abuse of discretion. The trial court took careful account of matters of liquidity, restrictions on transfer, and tax consequences. The division leaves Wife and Husband with exactly equal holdings of the corporation's shares. Under California law, their positions as shareholders are equivalent. Wife complains of the advantages which accrue to Husband, and of the disadvantages to her, with respect to the shares by virtue of the fact that he is a key employee and a director and she is not. It is true that Husband is in a position to influence corporate decisions which may affect Wife as a shareholder. But it is also true that as a shareholder Wife has the benefit of the various provisions of California law designed to protect minority shareholders against majority abuse. (Cf. Note, *California's New General Corporation Law: Prospects for Minority Shareholders* (1976) 7 Pacific L.J. 706; 6 Witkin, Summary of Cal. Law (8th ed. 1974) Corporations, § 164, p. 4442 et seq.) Any of the orders Wife seeks would have the direct effect of giving her a better position as a shareholder than Husband would have as a shareholder. We find in the record no economic circumstances so compelling as to place the failure to make such an order beyond "the bounds of reason." We conclude that the in-kind division was within the scope of the court's sound discretion.

■   Wife also complains of the trial court's failure to make a finding fixing the value of the Hunt & Behrens shares. Her contention is that under decisions such as *In re Marriage of Tammen* (1976) 63 Cal.App.3d 927 [134 Cal.Rptr. 161], such a finding is mandatory. But given a decision to divide fungible securities equally in kind, no rational purpose for valuation, germane to the dissolution proceeding, remains. (Cf. *In re Marriage of Bridgen, supra,* 80 Cal.App.3d 380, 391.)

*Allocation of Corporate Profits*

Pending trial, the court ordered Husband to pay $1,000 per month for Wife's support. The May 24 order makes the same amount payable as spousal support until the remarriage of Wife or the death of either party, subject to the continuing jurisdiction of the court. ■ Wife contends that she should receive, in addition, a proportionate share of the income Husband takes from Hunt & Behrens, Inc., in the form of bonuses and contributions to his account under the corporation's profit-sharing plan, "whether it is termed spousal support or payments in lieu of dividends, to fairly reflect her involuntary ownership interest in Company."

As phrased in her brief, Wife's contention is less an allegation of trial court error than a proposal as to how the judgment might be improved. As such, it is addressed to the wrong court. Our function in a situation of this kind is not to fashion a dissolution decree but rather to determine whether the decree entered by the trial court should stand.

On the basis of the record before us, we readily conclude that the trial court's spousal support order was well within the range of its sound discretion and that we should not interfere with it. (Cf. Civ. Code, § 4801, subd. (a); *In re Marriage of Boseman* (1973) 31 Cal.App.3d 372, 378 [107 Cal.Rptr. 232]; *In re Marriage of Rosan* (1972) 24 Cal.App.3d 885, 892 [101 Cal.Rptr. 295].)

Wife's alternative theory, that she should receive payments calculated on Husband's bonuses and profit-sharing contributions "in lieu of dividends," appears to us to reflect a misunderstanding of Wife's role as a shareholder. A shareholder is not necessarily *entitled* to dividends. The corporate directors retain broad discretion to apply funds which might be distributed as dividends to other proper corporate purposes instead. (Cf. 1 Ballantine & Sterling, Cal. Corporation Laws (4th ed. 1962, supp. 1982) § 142.05, pp. 8-40 - 8-42.) Thus, the real question presented by Wife's contention is whether the corporation's decision to devote funds to bonuses and profit-sharing contributions for Husband (as a corporate employee), rather than to dividends for all shareholders, was taken in good faith. Wife tenders no evidence that it was not. Should such evidence come to light, her proper remedy would be by way of appropriate action *as a shareholder.* (Cf. *ibid.*)

*Claims for Accounting and for Reimbursement*

There is evidence that, during the nearly five years which elapsed between separation and judgment, Husband received or took possession of certain community property and made expenditures for the benefit of the community, of Wife, and of other family members. On appeal, each party raises contentions

based on this evidence. Wife contends that the community property Husband received exceeded by $68,485 those of his expenditures which were properly chargeable to the community and to credits otherwise due him, and that Husband should be required to account for, and to pay over half of, this amount. Husband contends that he is entitled to additional reimbursements amounting to more than $20,000, although within his briefs the amount he claims varies over several steps between $20,650 and $26,274.50. His closing brief attributes the variation in these figures in part to the intervening decision in *In re Marriage of Epstein* (1979) 24 Cal.3d 76 [154 Cal.Rptr. 413, 592 P.2d 1165], and in part to "a change in the understanding of these figures by . . . counsel."

Our examination of the record and briefs lead us to empathize with counsel's uncertainty. The testimony relevant to Husband's receipts and expenditures apparently relied heavily for coherence on a series of trial exhibits which the parties have not seen fit to bring before us (cf. *Kipp* v. *Warriner* (1948) 86 Cal.App.2d 814 [195 P.2d 888]); and the briefs do little to clarify the picture for us. Wife acknowledges the propriety of some of Husband's reimbursement claims but resists others. The record does not make clear the exact nature of the contested expenditures. Wife lists several items of property held or received by Husband after separation which, she asserts, were community property, but the largest single item, a "Subchapter S distribution" to Husband from Hunt & Behrens amounting to just under $120,000 (three-fourths of the total value of all the items on Wife's list), is left clouded by uncertainty on the record before us. Apparently only about two-thirds of the "distribution" was actually distributed to Husband, and apparently most of the amount actually distributed was offset by income taxes, attributable to the corporate profits from which the distribution was made, which Husband paid. Nor does the record make clear which of the various types of disbursement which might have been termed a "Subchapter S distribution" (cf., e.g., Grant, Subchapter S Taxation (1974) §§ 23.1-27.2, pp. 287-340) was involved. We would be inclined to conclude that the "distribution" was community property, that it was subject (in the relevant sense) to Husband's control only to the extent that it was actually distributed to him, and that the distribution was largely offset by the community tax liability which Husband discharged. But the vagueness of the record forestalls a more categorical conclusion. Nor have we been guided to, nor can we find, clear evidence from which to characterize the source of payments for which Husband claims reimbursement. The *Epstein* rules upon which Husband relies (*In re Marriage of Epstein, supra,* 24 Cal.3d 76) would apply to postseparation expenditures from Husband's *separate property* but not to expenditures from as-yet-undivided *community property.* Finally, the record does not yield, and has not been shown by the parties to provide, legally preemptive support for either side's position as to the applicability of the *Epstein* rules and their exceptions, even were we to assume that all or some of Husband's expenditures were from his separate property.

■ We may not presume error. In this court, all intendments must be indulged to support the trial court's judgment. (Cf. 6 Witkin, Cal. Procedure (2d ed. 1971, pt. I) Appeal, § 235, pp. 4225-4226.) ■ Nor may we presume that any apparent error was prejudicial: "The *burden is on the appellant,* not alone to show error, but to show *injury* from the error." (*Id.,* § 290, p. 4277.) The markups attached to the trial court's March 21 minute order make clear that the court intended to reject Husband's reimbursement claims. The documents further indicate that the court may have relied on rules stated in *See v. See* (1966) 64 Cal.2d 778, 784, 785 [51 Cal.Rptr. 888, 415 P.2d 776], a reliance which (insofar as it might have related to expenditures from separate property) would have been erroneous in light of *In re Marriage of Epstein, supra,* 24 Cal.3d 76, 82-86, but we cannot conclude that the error would require reversal. From this record the trial court could reasonably have concluded that Husband's expenditures from separate property fell within *Epstein*'s exceptions. Conversely, the state of the record is such as to have permitted a reasonable conclusion that the community property in Husband's control following separation was applied in its entirety to discharge community obligations.

In short, no reversible error having been demonstrated, we will not disturb the trial court's determination that neither party is entitled to additional recovery from the other on account of Husband's transactions during the prejudgment separation.

### *Attorney Fees and Costs*

Pending trial, the court made pendente lite orders for attorney fees and costs, but in the judgment represented by its May 24, 1978 order, it directed that each party bear his, her, or its own attorney fees and costs. Wife contends that this was an abuse of discretion.

■ It is well settled that decisions whether and in what amounts or proportions to award attorney fees and costs in family law matters are within the broad discretion of the trial court and that the trial court's decision in a particular case will be disturbed on appeal only on a clear showing of abuse of discretion. (*In re Marriage of Milhan* (1980) 27 Cal.3d 765, 779 [166 Cal.Rptr. 533, 613 P.2d 812]; *In re Marriage of Aufmuth* (1979) 89 Cal.App.3d 446, 466 [152 Cal.Rptr. 668]; *In re Marriage of Janssen* (1975) 48 Cal.App.3d 425, 428 [121 Cal.Rptr. 701]; cf. *In re Marriage of Lopez* (1974) 38 Cal.App.3d 93, 113 [113 Cal.Rptr. 58].) Here, the trial court had made a first pendente lite order for $1,000 on fees and $1,000 on costs to be paid by Husband, and a second order for $5,000 to be paid to Wife's attorneys out of community funds without prejudice to a subsequent determination "as to against whose one-half of the community it should be charged." We find no subsequent allocation of the $5,000

order; hence, as a practical matter, the payment was charged half to the distributable share of each party. The net effect of the two orders, therefore, would have been that Husband was required to pay $3,500 on account of Wife's attorney fees and $1,000 on account of her costs of suit.

After trial, the court concluded that "In view of the property available to each of the parties, including but not limited to their respective separate property, and the length and extent of the litigation, it is fair to the parties that each shall be responsible for their respective attorney's fees and costs incurred in this litigation and neither party shall be required to pay attorney's fees or costs for the other." The narrow question is whether this refusal to make a third order for attorney fees and costs for the benefit of Wife was a clear abuse of discretion.

We conclude that it was not. Factors which the trial court should consider have been variously cataloged; one of the more thorough discussions is in *In re Marriage of Lopez, supra,* 38 Cal.App.3d 93, 113-114. ▮ The trial court's reference to "the length and extent of the litigation" invokes *Lopez'* observation that "The exercise of sound discretion by the trial court in the matter of attorney's fees includes also judicial evaluation of whether counsel's skill and effort were wisely devoted to the expeditious disposition of the case. Certainly a desirable objective of domestic litigation is prompt and equitable resolution of marital difficulties rather than their bitter prolongation. Conscientious and successful efforts by counsel to resolve as many areas of disagreement as possible without judicial intervention is entitled to serious consideration in awarding attorney's fees. Compensable professional legal skill is not limited to trial time or courtroom techniques alone." (P. 113.) Conversely, services which have no apparent effect other than to prolong and to complicate domestic litigation cannot be deemed "reasonably necessary" (Civ. Code, § 4370) "to properly litigate the controversy" (*In re Marriage of Janssen, supra,* 48 Cal.App.3d 425, 428) and may properly be disregarded by a trial court determining whether and in what amount to order one party to contribute to the cost of the other's representation. (Cf. *In re Marriage of Cueva* (1978) 86 Cal.App.3d 290, 302-303 [149 Cal.Rptr. 918].) We find no clear abuse of discretion in the trial court's evaluation of this record. Indeed, similar considerations lead us to conclude that each party should bear his or her own attorney fees and costs on this appeal.

*Profit-sharing Plan*

Husband contends that the trial court overvalued his account in the Hunt & Behrens profit-sharing plan. We agree.

Nothing in the record suggests that the plan was anything other than an orthodox profit-sharing plan, designed to obtain tax benefits both for the corporation and for its participating employees under the regulatory scheme now embodied in the Employee Retirement Income Security Act of 1974 (Pub.L. No. 93-406, 88 Stat. 829 & amends.) and cognate regulations. In normal operation such plans provide for employer contributions based on profits and for distribution to participants in the form of retirement benefits. They are designed to provide incentives as part of a compensation and benefits package. (Cf., e.g., Robinson et al., Attorney's Guide to Pension and Profit-Sharing Plans (Cont.Ed.Bar 2d ed. 1980) § 2.1, pp. 7-8, and *passim.*)

Husband's account in the Hunt & Behrens profit-sharing plan was unquestionably community property immediately before the parties separated and was valued at $45,549.26 at the date of separation. The issue is whether employer contributions subsequent to separation, which increased the value of Husband's account to an amount fixed by court at $69,000 at the time of trial, were divisible community property. The trial court apparently believed they were. It set the divisible value of the plan at $69,000 and directed that Husband should receive the plan and should pay Wife half of $69,000 in cash.

■ On the essentially uncontradicted pertinent facts of record, this was clearly error. We are not dealing here with an indivisible appreciating asset which is to be valued, as a general rule, at time of trial rather than at date of separation. (Cf. Civ. Code, § 4800, subd. (a).) The value of Husband's profit-sharing account can readily be divided, for purposes of characterization, into preseparation and postseparation increments. Patently, the corporation's contributions to Husband's account were intended and received as a form of compensation; postseparation contributions would, by the orthodox rule, be Husband's separate property. (Civ. Code, § 5118.) Hence only the value of the account at date of separation, together with any increase in value directly attributable to assets then in the account, were subject to division as community property. (Cf. *In re Marriage of Imperato* (1975) 45 Cal.App.3d 432, 436-437 [119 Cal.Rptr. 590].) Wife's argument that the postseparation contributions were community property because they were based on *profits* to which the community, as a shareholder, had prior claim, is ingenuous if not disingenuous. *In re Marriage of Aufmuth, supra,* 89 Cal.App.3d 446, 464-465, upon which she relies, quotes at some length from *Imperato* and tends to support our conclusion. *Aufmuth* carefully distinguishes between *corporate* earnings which (when undistributed) may tend to cause appreciation in the value of corporate shares, and the earnings of a *shareholder-employee* " 'in salary, bonuses *and other forms of benefits.*' " (*In re Marriage of Aufmuth, supra,* at pp. 464-465, quoting from *In re Marriage of Imperato, supra,* at pp. 437-438; italics added.) Implicit in the *Aufmuth* distinction is, in context, the conclusion that the shareholder-employee's earnings are his separate property.

Upon the record before us, the trial court's error may be cured by modifying the judgment to reduce the cash payment due from Husband to Wife on account of the profit-sharing plan from $34,500 to half of the sum of $45,549.26 and any appreciation attributable to assets in Husband's plan account at date of separation.

## Other Issues

Husband contends that Wife's second appeal is frivolous; he seeks sanctions. While we are not persuaded that the second appeal was provident or that, upon reflection, Wife herself regarded it as such, we deem this arguable error of judgment insignificant in the context of the litigation viewed as a whole and we decline to impose sanctions.

Each party has sharply criticized the other as to matters of appellate practice and procedure. We have attempted to cut through these procedural quibbles to get to the substance of the appeals.

## Disposition

In appeal A010035/1 Civ. 46457, the judgment is modified to reduce the cash payment due from Husband to Wife on account of the Hunt & Behrens profit-sharing plan from $34,500 to one-half of the sum of $45,549.26 and any increase in value, up to the date of trial, directly attributable to assets in Husband's profit-sharing plan account at date of separation (Oct. 1, 1973). As so modified, the judgment is affirmed.

Appeal A010110/1 Civ. 47993, is dismissed.

Each party shall bear his or her own attorney fees and costs on appeal.

Grodin, P. J., and Miller, J., concurred.

A petition for a rehearing was denied December 20, 1982, and the opinion was modified to read as printed above. The petition of appellant Wife for a hearing by the Supreme Court was denied January 19, 1983. Grodin, J., did not participate therein.