Filed 9/25/13  Garcia v. Roberts CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JOHNNY GARCIA,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>RONALD G. ROBERTS et al.,<br><br>    Defendants and Appellants. | F063386<br><br>(Super. Ct. No. 04CECG03607)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Jeffrey Y. Hamilton, Jr., Judge.

Yarra, Kharazi & Clason and H. Ty Kharazi for Defendants and Appellants.

McCormick, Barstow, Sheppard, Wayte & Carruth and William H. Littlewood for Plaintiff and Respondent.

-ooOoo-

In a previous appeal of this same case,[1] we affirmed the *liability* of defendant Ronald G. Roberts to plaintiff Johnny Garcia[2] for breach of contract and fraud in connection with a real estate transaction, but we remanded the matter back to the superior court for a new trial on the limited issue of *damages*. (*Garcia v. Roberts* (2009) 173 Cal.App.4th 900 (*Garcia I*).) During the retrial of damages, defendant argued that plaintiff was not entitled to *any* damages since, allegedly, plaintiff could not have obtained a bank loan to complete the real estate purchase. The trial court rejected defendant's argument because plaintiff's ability to perform his part of the transaction was an element of liability, not damages, and liability was established in the original trial and affirmed on appeal. After hearing the expert testimony and other evidence presented in the retrial of damages, the trial court found that plaintiff's damages were in the amount of $184,798, and a judgment was entered in that amount. Defendant moved for another new trial, which was denied. Defendant appeals once again, claiming the trial court erred because (1) plaintiff's ability to perform was an aspect of damages, not liability and (2) there was insufficient evidence to support the amount of damages arrived at by the trial court. We disagree with both points and affirm the judgment below.

---

[1]    Our partially published opinion in the prior appeal was filed on May 4, 2009, as case No. F054234, and is referred to herein as *Garcia I*. Since the present appeal involves the same action, it is permissible to refer to nonpublished portions of that opinion (see Cal. Rules of Court, rule 8.1115(b)(2)). When we refer to matters in the published portion of the opinion, we shall provide the applicable page numbers of the Official Reports. When referring to matters appearing in the nonpublished portions, we describe them as such; however, it is not possible to give page number references for the nonpublished portions.

[2]    Plaintiff died in 2007, several months prior to the original trial in this action. Since then, his rights and interests in the litigation have been represented by his wife and successor in interest, Omega Garcia, and more recently by the personal representative of his estate, Lorena Garcia. In our discussion herein, any reference to plaintiff means Johnny Garcia, unless the context indicates otherwise.

## FACTS AND PROCEDURAL HISTORY

A. The First Trial

In *Garcia I*, we provided a summary of the facts and circumstances leading to plaintiff's lawsuit, as well as the proceedings that occurred in the first trial. For convenience, we reproduce much of that summary here:[3]

*"Factual Background Prior to Plaintiff's Lawsuit*

 "The parties' dispute concerns a parcel of land located on Academy Avenue in Sanger, California (the property). Plaintiff originally rented the property, along with a mobilehome situated there, from an entity known as the Sasashima Family Trust for $500 per month. Plaintiff lived in the mobilehome and also ran a modest business as a backhoe operator from there. In 2001, plaintiff entered into negotiations with Akiko Sasashima, the trustee of the Sasashima Family Trust, to purchase the property. In October or November of 2001, an agreement was reached giving plaintiff an option to purchase the property for $140,000. Pursuant to that agreement, plaintiff paid the sum of $7,500 to the Sasashima Family Trust and was given two years to come up with the remaining balance of the purchase price ($132,500), with the $7,500 counting as a downpayment. In the interim, plaintiff agreed to continue paying $500 in monthly rent.

 "Plaintiff found it difficult to obtain financing to pay the $132,500 balance to the Sasashima Family Trust. Eventually, he mentioned this fact to an acquaintance, defendant Ronald Roberts. Plaintiff occasionally performed backhoe work for Mr. Roberts, who was a plumbing contractor. During one such job, plaintiff asked Mr. Roberts if he would be willing to loan the money to plaintiff. According to plaintiff's deposition testimony introduced at trial, plaintiff and Mr. Roberts entered into an oral agreement regarding the property. Under the terms of the oral agreement, Mr. Roberts agreed to pay the $132,500 balance of the purchase price to the Sasashima Family Trust as a loan to plaintiff, but title to the property would be put in Mr. Roberts's name and plaintiff would be required to pay interest on the loan of 12 percent or approximately $1,325 per month for a period of two

---

[3] This factual summary referred to defendant by name (i.e., Mr. Roberts). We leave that intact. Although Mrs. Sherry Roberts, defendant's wife, was mentioned as a codefendant in the excerpt, we note that she is not a party to this appeal.

3.

years. By the end of the two-year period, plaintiff was to secure financing to pay off the loan, whereupon title would be conveyed to plaintiff.

"In reliance on this oral agreement, plaintiff facilitated the sale of the property from the Sasashima Family Trust to defendants. The Sasashima Family Trust sold the property to defendants for $132,500, a price that was apparently based on the fact that plaintiff previously paid $7,500 toward the $140,000 purchase price. With additional closing costs, defendants obtained title to the property for a total sum of $133,027. Escrow closed on September 26, 2002.

"On September 26, 2002, shortly after escrow closed, defendants asked plaintiff and his wife to come to their home to sign paperwork regarding the property. Defendant Sherry Roberts presented a form contract entitled 'LEASE WITH OPTION TO PURCHASE' (the lease-option agreement). After Mrs. Roberts filled out the lease-option agreement, she read all or most of the terms out loud and provided additional explanation of the terms as she read them. This was apparently done because plaintiff spoke some English, but could not read it, while plaintiff's wife did not understand English at all. All four parties then signed the lease-option agreement. [¶] … [¶]

"In 2004, plaintiff began the process of seeking to qualify for and obtain financing to purchase the property from defendants. Plaintiff started working closely with a mortgage broker by the name of Gilbert Servin, who was owner of Su Casa Mortgage Company. Mr. Servin helped plaintiff 'clean up' his credit history and improve his credit score. With Mr. Servin's assistance, plaintiff's credit score improved significantly by August of 2004. At that point, Mr. Servin 'knew that [he] could get [plaintiff] a loan' to complete plaintiff's purchase of the property. Accordingly, Mr. Servin opened an escrow regarding the property with Stewart Title Company on August 19, 2004, a preliminary title report was requested from the title company and plaintiff took steps to procure homeowner's insurance. Additionally, Mr. Servin submitted a home loan application to Countrywide Financial Corporation on plaintiff's behalf and ordered an appraisal of the property.

"In late August or early September of 2004, Mr. Servin placed a telephone call to Mr. Roberts to discuss the status of the escrow and to confirm the terms of the sale to plaintiff. Mr. Roberts confirmed that the agreement was to sell the property to plaintiff and his wife for the same amount of money that defendants had paid to purchase it. During the same conversation, Mr. Servin informed Mr. Roberts that an escrow had been opened at Stewart Title Company, a loan application had been submitted

4.

and it appeared the loan would be approved pending receipt of the appraisal. Mr. Servin attempted to set up a meeting with Mr. Roberts to review and sign a written purchase agreement that the lenders would require for the transaction. Mr. Roberts responded that he and Mrs. Roberts were just leaving for Europe on a vacation that would last about one month and said 'don't do anything until I get back.'

"Subsequently, an appraisal of the property was completed that showed a market value of $ 186,000. Additionally, sometime in October of 2004, Mr. Servin received word that a commercial lender had approved plaintiff's loan request and plaintiff was informed of this fact, whereupon plaintiff made a deposit of approximately $10,000 into the escrow to cover anticipated lending fees and closing costs regarding the transaction.

"After defendants returned from their vacation, plaintiff and Mr. Servin had a meeting with defendants at defendants' home to discuss the real estate purchase. Mr. Servin thought the meeting was in late September of 2004; Mr. Roberts was certain it was on October 23, 2004. At the meeting, Mr. Servin presented a standard form purchase agreement to defendants that Mr. Servin had prepared in order to satisfy the lender's requirements. The proposed purchase agreement was backdated to September 21, 2002, which Mr. Servin said was either a mistake or perhaps was due to his understanding of the parties' original agreement. The proposed purchase agreement reflected that a $7,500 deposit was received toward a total $140,000 purchase price, with a balance due to 'seller' of $132,500. It further stated that 'buyer' had to obtain financing by October 31, 2004, and would continue to pay rent in an unspecified amount until the purchase was completed.

"During the meeting, defendants excused themselves for a private conversation about the proposed purchase agreement. Mr. Roberts returned and told plaintiff and Mr. Servin that he would not sign the proposed purchase agreement at that time, but he would go to the title company to sign it. Defendants never asked plaintiff or Mr. Servin to make any changes or corrections to the proposed purchase agreement. Mr. Roberts did go to the title company the next day, but he never signed the proposed purchase agreement. In fact, he refused to do so. Plaintiff continued to call Mr. Roberts until October 26, 2004, demanding that Mr. Roberts sell the property to him, but Mr. Roberts simply told plaintiff he did not like the way the papers had been prepared. Mr. Roberts told plaintiff that he (plaintiff) had not fulfilled his obligations and that his 'time was over'—he had lost his opportunity to purchase the property.

"Sometime before defendants refused to sign the proposed purchase agreement, plaintiff told defendants that he had heard the property had appreciated and was worth $500,000. Mrs. Roberts thought at that time that plaintiff's estimate of $ 500,000 was perhaps a good one.

*"Relevant Procedural History*

"Plaintiff filed the present action against defendants on December 16, 2004. On December 14, 2005, plaintiff filed a third amended complaint alleging causes of action for, among other things, breach of oral contract, breach of implied covenant of good faith and fair dealing, and fraud. The third amended complaint was the operative pleading at the time of trial on June 25, 2007. As with all prior versions of the complaint, the underlying contract was alleged to be an *oral* loan agreement. No written contract was alleged. [¶] … [¶]

"On February 7, 2007, plaintiff Johnny Garcia died. Plaintiff's wife was then substituted into the case to continue the litigation as plaintiff's successor in interest and personal representative.

"Trial commenced on June 25, 2007.… [¶] … [¶]

"The jury found in favor of plaintiff on all causes of action.… Damages of $366,973 were awarded to plaintiff. Judgment was entered in favor of plaintiff on August 13, 2007.

"Defendants moved for JNOV[4] and for new trial. The trial court granted a limited new trial on the issue of damages only, but otherwise denied the motions. Defendants' appeal followed." (*Garcia I*, *supra*, 173 Cal.App.4th at pp. 903-908, fns. omitted.)

B.    The Prior Appeal

In *Garcia I*, although we disallowed the breach of *written* contract claim,[5] we

affirmed the jury's finding that defendant was liable under the *oral* contract and fraud

---

**4**    Judgment notwithstanding the verdict.

**5**    The trial court's order allowing plaintiff to amend his complaint during trial to include a new cause of action for breach of *written* contract was reversed by us in the published portion of *Garcia I* on the ground that such amendment was prejudicial under the circumstances. (*Garcia I*, *supra*, 173 Cal.App.4th at pp. 908-913.) Nevertheless, we concluded (in a nonpublished portion of *Garcia I*) that plaintiff's *oral* contract claim was

6.

causes of action.  One of the grounds raised by the appeal in *Garcia I* was that "there was no substantial evidence" to support plaintiff's claim that defendant breached the oral loan agreement in "its express terms or in any implied covenant of good faith and fair dealing."  (*Garcia I*, 173 Cal.App.4th 900 [nonpub. portion].)  We rejected that argument and concluded there was sufficient evidence to support the finding of liability under the oral contract theories.  In the course of our discussion, we expressly held that "[t]he testimony was sufficient to show that plaintiff secured the necessary financing to repay the loan prior to, and at the end of, the relevant contract period, which was clearly communicated to [defendant].  [Defendant] breached the agreement by his conduct that effectively prevented or interfered with plaintiff's ability to successfully tender funds from his lender."  (*Ibid*.)  We noted further that "[t]he jury concluded that [defendant's] conduct amounted to a breach of the implied covenant of good faith and fair dealing," and we expressly agreed with that conclusion.  (*Ibid*.)  We also went through a detailed analysis showing that the evidence was sufficient to establish the fraud cause of action against defendant.  (*Ibid*.)

In affirming liability under the oral contract and fraud causes of action, we stated as follows regarding the amount of damages:  "As to issues relating to the correct measure of damages, we leave that to the trier of fact on remand, inasmuch as the trial court granted a motion for new trial on the issue of damages."  (*Garcia I*, 173 Cal.App.4th 900 [nonpub. portion].)  Aside from our reversal as to one nonessential issue (i.e., the amendment during trial), we expressly affirmed, "[*i*]*n all other respects*, the orders and judgment of the trial court .…"  (*Ibid*., italics added.)  In short, our disposition meant that (1) liability was established and (2) there would be a limited new trial on the issue of damages.

---

valid, was not barred under the parol evidence rule, was supported by substantial evidence and the statute of frauds defense was forfeited by defendants.

C.    The New Trial on Limited Issue of Damages

The retrial on the issue of damages was commenced on May 16, 2011, in Fresno County Superior Court. At that trial, plaintiff and defendant each called retained expert witnesses to offer opinions as to the fair market value of the subject property at the time of defendant's breach of contract. Plaintiff's expert, Greg Palmer, concluded the fair market value of the property at the time of the breach was $560,000, or $35,000 per acre. Mr. Palmer testified that his opinion as to value was based on a range of comparable sales in the area "from a low of $21,000 per acre to a high of $52,291 per acre." Defendant's expert, Jacob Brewster, testified that in his opinion the fair market value of the property was $208,000, or $13,000 per acre, at the time of breach. Both experts prepared written reports which were admitted into evidence.[6] Defendant also called the City Planner for the City of Sanger, Ralph Kachadourian, to offer testimony regarding the development plans for the City of Sanger during the relevant time period.

Additionally, during the course of the retrial of damages, defendant's counsel elicited testimony from plaintiff's wife and others relating to the issue of whether plaintiff had the ability to obtain a loan to purchase the real property. This included testimony indicating plaintiff was ill or out of work during that time period. According to defendant, such evidence indicated that plaintiff "could not have obtained a loan" and, consequently, could not have performed under the contract. Plaintiff's counsel did not attempt to demonstrate plaintiff's financial ability to complete the purchase because the question of liability had already been established in the original trial and affirmed in *Garcia I*, *supra*, 173 Cal.App.4th 900.

Following the retrial on damages, the trial court issued a statement of decision on July 21, 2011. The trial court indicated it had considered the evidence relating to fair market value of the real property and concluded that, as of October 2004, its value was

---

[6]    Defendant failed to include his own expert's report in the record on appeal.

$21,000 per acre. Multiplying $21,000 by the total number of acres (16), the total value of the real property was found to be $336,000. Applying the formula for damages pursuant to Civil Code section 3306, the trial court stated: "Based on the foregoing, the difference between the agreed upon price ($133,027.00) and the fair market value of the Property at the time of the breach ($336,000.00) is $202,973.00. Thus, the Court finds that Plaintiff has been damaged as a proximate result of Defendant's breach in the principal amount of $202,973.00." Plaintiff's damages were then offset by the trial court in the amount of $18,175, based on the cost to clean up the property and monies previously paid to plaintiff in connection with the County of Fresno's "partial take" concerning the property. After applying the offset, the trial court awarded plaintiff the sum of $184,798 in damages.

The trial court entered judgment in favor of plaintiff and against defendant in the amount of $184,798, plus 10 percent interest thereon from July 21, 2011, until paid.

Defendant moved for a new trial. The supporting memorandum of points and authorities argued two grounds for the motion: "insufficiency of the evidence" and "error of law." Defendant's motion for a new trial argued that plaintiff was not entitled to any damages, since plaintiff failed to prove in the retrial of damages that he could have obtained a loan to complete the purchase of the real property. In addition, defendant claimed the fair market value of the real property arrived at by the trial court was not supported by the evidence. At oral argument of the motion for new trial, the trial court expressed its view that plaintiff's ability to perform the contract was an element of liability, not damages, and it reminded defendant that liability was found by the jury and was not challenged on appeal. On September 1, 2011, the trial court issued its order denying the motion for new trial. Defendant appeals from the judgment, arguing that the trial court should have granted the motion for new trial.

9.

## DISCUSSION

### I.     Standard of Review

It is fundamental to the appellate process that a judgment is presumed correct and error must be affirmatively shown.  (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)  "A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness."  (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.)  The appellant carries the burden of showing the trial court erred and that such error was prejudicial.  (*In re Marriage of Behrens* (1982) 137 Cal.App.3d 562, 575.)  Where an appeal challenges the trial court's resolution of factual issues, we apply the substantial evidence rule in which "'the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted,' to support the findings below. [Citation.]"  (*Oregel v. American Isuzu Motors, Inc*. (2001) 90 Cal.App.4th 1094, 1100.)  On the other hand, questions of law are reviewed de novo.  (*Mancuso v. Southern Cal. Edison Co*. (1991) 232 Cal.App.3d 88, 95.)  Here, the issue of whether plaintiff's ability to perform the contract was an element of liability or of damages is a question of law that we review de novo.  On the other hand, the issue of the sufficiency of the evidence to support the trial court's damage award is obviously a factual question that we review under the substantial evidence rule.

The trial court's determinations were challenged below in the context of a motion for new trial.  "A trial court has broad discretion in ruling on a new trial motion, and the court's exercise of discretion is accorded great deference on appeal.  [Citation.]  An abuse of discretion occurs if, in light of the applicable law and considering all of the relevant circumstances, the court's decision exceeds the bounds of reason and results in a miscarriage of justice.  [Citations.]"  (*Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 752.)  However, in our review of an order *denying* a new trial, we consider the entire record to make an independent judgment

10.

as to whether the error, if any, was *prejudicial*.  (*City of Los Angeles v. Decker* (1977) 18 Cal.3d 860, 872.)

## II.     The Trial Court Correctly Limited the New Trial to Damage Issues

Defendant argues that plaintiff's performance or ability to perform under the contract was an aspect of *damages*, not liability, and thus it was properly raised by defendant in the retrial of damages.  Defendant is mistaken.  The essential elements of a breach of contract claim are:  "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." (*Reichert v. General Ins. Co*. (1968) 68 Cal.2d 822, 830.)  As this enumeration reflects, a "plaintiff's performance or excuse for nonperformance" (*ibid*) is not an issue subsumed under the category of damages, but is, properly speaking, an essential and distinct element of a plaintiff's prima facie case necessary to show that a defendant was *liable*. "It is elementary a plaintiff suing for breach of contract must prove it has performed all conditions on its part or that it was excused from performance."  (*Consolidated World Investments, Inc. v. Lido Preferred Ltd*. (1992) 9 Cal.App.4th 373, 380; see also *Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, 1614 [performance an essential element of cause of action].)

This comports with the fact that a finding of liability in a civil case ordinarily means that all of the elements necessary to recover damages have been proven. (See Black's Law Dict. (9th ed. 2009) p. 997 ["civil liability" is defined as "[t]he state of being legally obligated for civil damages"].)  As summarized in CACI No. 350, the standard jury instruction used in breach of contract cases:  "If you decide that [plaintiff] has proved [his] claim against [defendant] for breach of contract, you also must decide how much money will reasonably compensate [plaintiff] for the harm caused by the breach.  This compensation is called 'damages.'  The purpose of such damages is to put [plaintiff] in as good a position as [he] would have been if [defendant] had performed as

11.

promised." (Italics omitted.) We conclude that plaintiff's performance or ability to perform was a component of *liability*, not *damages*.

Defendant appears to argue that because recovery of damages *depended upon* plaintiff's ability to perform the contract, the latter issue may be reopened at the retrial of damages. That is not the law. "[W]hen, upon motion for a new trial, an order is made limiting the scope of the motion to a certain specified issue, 'it opens for examination only the issue upon which it is ordered; that the determination of the other issues remains in the record and that they cannot be retried.'" (*J. Levin Co. v. Sherwood & Sherwood* (1921) 55 Cal.App. 308, 312.) Consequently, where a trial court granted a new trial "'upon the issue of damages,'" its order could not be "construed as opening for retrial every issue upon which the plaintiff's asserted right to recover damages depends," for to do so would mean the court's limitation to the issue of damages would be rendered idle and meaningless. (*Id*. at pp. 312-313; accord, *Karallis v. Shenas* (1950) 97 Cal.App.2d 280, 283 [where an order grants a new trial as to a single issue, "it opens for examination all of the facts and circumstances relative to that one issue and as to other issues there shall be no retrial or examination of the facts"].) Similarly, in *Aero Spacelines, Inc. v. Superior Court* (1977) 76 Cal.App.3d 177, 179-181, where a new trial was ordered on the limited issue of damages, the Court of Appeal held that it was error for the trial court to allow the defendant to raise (during the retrial) the issue of plaintiff's failure to join an indispensible party: "In the case before us, there has been a trial and verdict which decided that defendant was liable to plaintiffs upon the claim there litigated. The new trial must be confined to a determination of the amount of the damages recoverable by the present plaintiffs against the present defendant." (*Id*. at pp. 179-180.) Based on these authorities, it is clear that the trial court in the present case appropriately restricted its consideration to the issue of damages.

Moreover, it would have been error for the trial court to reopen an issue of liability, since liability was determined in the original trial and affirmed on appeal in

12.

*Garcia I*. Hence, all matters essential to contract liability—including the issue of plaintiff's performance or ability to perform the contract—became *final* and could not be disturbed in the retrial. One of the matters we expressly affirmed in *Garcia I* was the sufficiency of the evidence to "show that plaintiff secured the necessary financing to repay the loan prior to, and at the end of, the relevant contract period, which was clearly communicated to [defendant]. [Defendant] breached the agreement by his conduct that effectively prevented or interfered with plaintiff's ability to successfully tender funds from his lender." (*Garcia I*, *supra*, 173 Cal.App.4th 900 [nonpub. portion].) There is no question that the issue of plaintiff's ability to secure the loan was specifically decided at trial, affirmed on appeal and became final prior to the retrial.

Our case is in a similar posture to *Ayyad v. Sprint Spectrum, L.P.* (2012) 210 Cal.App.4th 851, 861-862, which explained: "A new trial order limited to certain issues vacates only the portion of the judgment pertaining to those issues, while 'the portion of the judgment pertaining to the unaffected issues remains in place and becomes final once the time for appeal passes.' [Citation.] In the case before us, the parties did appeal from the … judgment, but because we affirmed that judgment, it became final as to the issues unaffected by the new trial order.… [¶] Consistent with our affirmance of the new trial order, our directions on remand restricted the issues to be retried to those identified in that order. Consequently, the trial court's jurisdiction on remand was limited to retrying the issue of [the defendant's] damages and calculating any setoff. The trial court's jurisdiction did not extend to issues outside the scope of our directions."

Here, similarly, because the new trial order called for a limited retrial of the issue of damages, the trial court properly refused to reexamine an issue of liability that had already been decided and was final. For all of these reasons, we conclude the trial court did not abuse its discretion in refusing to reopen the issue of plaintiff's ability to perform the oral contract. Defendant's challenge on this ground fails.

### III. Damage Calculation Supported by Substantial Evidence

The trial court's award of damages to plaintiff was calculated based on a finding that the real property in question had a fair market value of $21,000 per acre. The trial court's statement of decision stated: "After taking into consideration the expert reports and testimony of the parties' respective property valuation experts, as well as the testimony of Ralph Kachadourian, City Planner for the City of Sanger, the Court finds that the fair market value of the Property as of October 2004 was $21,000.00 per acre." Defendant argues that there was no substantial evidence presented to support the trial court's finding that the real property was worth $21,000 per acre.

Defendant's argument fails, first of all, because he has failed to present an adequate record on appeal. As stated in its statement of decision, the trial court expressly considered not only the testimony presented at trial but also the written reports submitted by the parties' two experts. The record on appeal does not include those written reports. "Appealed judgments and orders are presumed correct, and error must be affirmatively shown. [Citation.] Consequently, plaintiff has the burden of providing an adequate record. [Citation.] Failure to provide an adequate record on an issue requires that the issue be resolved against plaintiff. [Citation.]" (*Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502.) "To the extent the court relied on documents not before us, our review is hampered. We cannot presume error from an incomplete record. [Citation.]" (*Christie v. Kimball* (2012) 202 Cal.App.4th 1407, 1412.) "'[I]f the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed.'" (*Gee v. American Realty & Construction, Inc*. (2002) 99 Cal.App.4th 1412, 1416.) Here, defendant failed to provide key documents that were considered by the trial court and related to the issue of value. Therefore, the record on appeal is inadequate and defendant's claim that the evidence was insufficient to support the finding of value is rejected as unsupported.

14.

Defendant's argument fails for another reason. Despite the fact that the record on appeal is incomplete, there is nonetheless sufficient evidence in the record to support the trial court's finding that the real property had a fair market value of $21,000 per acre. Plaintiff's expert witness, Greg Palmer, testified to a range of reasonable values of the property, based on other comparable sales, "from a low of $21,000 per acre to a high of $52,291 per acre." We agree with plaintiff that the trial court, as the finder of fact, was completely within its right to find in the context of all the evidence before it that the lower end of the range of values testified to by plaintiff's expert was the appropriate value of the property. In conclusion, defendant's argument fails because substantial evidence supported the trial court's finding.

## **DISPOSITION**

The judgment of the trial court is affirmed. Costs on appeal are awarded to plaintiff.

_____
Kane, J.

WE CONCUR:


_____
Wiseman, Acting P.J.


_____
Levy, J.

15.