Filed 11/12/13  Marriage of Kirwan CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Marriage of DEBRA G. and THOMAS P. KIRWAN.<br><br>DEBRA G. KIRWAN,<br><br>    Respondent,<br><br>        v.<br><br>THOMAS P. KIRWAN,<br><br>    Appellant. | G047460<br><br>(Super. Ct. No. 11D004572)<br><br>ORDER MODIFYING OPINION; NO CHANGE IN JUDGMENT |

It is ordered that the opinion filed herein on October 15, 2013, be modified in the following particulars:

1.  On page 14, after the first complete sentence of the disposition, insert the following sentence:  "This court's previous stay of the sale of the townhouse is lifted, and the petition for writ of supersedeas is dismissed as moot."

This modification does not effect a change in the judgment.


BEDSWORTH, J.

WE CONCUR:


O'LEARY, P. J.


ARONSON, J.

Filed 10/15/13 (unmodified version)

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re Marriage of DEBRA G. and THOMAS P. KIRWAN.<br><br>DEBRA G. KIRWAN,<br><br>    Respondent,<br><br>        v.<br><br>THOMAS P. KIRWAN,<br><br>    Appellant. | G047460<br><br>(Super. Ct. No. 11D004572)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, James L. Waltz, Judge. Affirmed.

Law Offices of Berna Warner Fredman and Berna Lynn Warner, for Appellant.

Hughes and Hughes and Lisa Hughes, for Respondent.

## INTRODUCTION

Thomas Kirwan appeals from a partial judgment entered in his divorce from his wife of 10 years, Debra Kirwan.[1]  Thomas has objected to several features of the judgment, some of which are ready for appellate review and some of which are not.

Most of the disagreements Thomas has with the judgment are matters for the exercise of the trial court's discretion, and, as Thomas has failed to show any abuse of that discretion, we affirm the judgment.  To the extent that Thomas wants us to reformulate the wording of the judgment to his satisfaction, we decline to do so.  As for those portions of the case over which the trial court reserved jurisdiction, there is no final judgment as to them, and we have no basis on which to review them until they are final.

## FACTS

Thomas and Debra were married in November 2000; they separated in May 2011.  They have two young children.  At the time of separation, Thomas worked for United Bank of Switzerland (UBS) as a financial advisor.  He had previously worked for Goldman Sachs and had moved to UBS in 2010.

As part of his incentive to move to UBS, the bank offered Thomas a series of "loans" totaling nearly $1 million.  These loans were to be "paid back" over nine years, provided Thomas continued to work for UBS.  If he quit, or was fired, or died, the loans were immediately due and payable.  UBS undertook to forgive a portion of the loans each year, reducing the balance owing until, after nine years (in 2019), the loans would be completely canceled.

This method of spreading an extra million dollars in upfront compensation over an extended period had and has tax consequences.  The amount forgiven each year would be taxed as income, even though Thomas did not receive an equivalent amount of

---

[1]    "Hereafter, we refer to the parties by their first names, as a convenience to the reader.  We do not intend this informality to reflect a lack of respect.  [Citation.]"  (*In re Marriage of Balcof* (2006) 141 Cal.App.4th 1509, 1513, fn. 2.)

2

money during that year.  This "phantom" income, as counsel and the court referred to it, became a problem both for valuing and dividing the marital estate and for computing support.

The other sticky wicket was a townhouse in Corona del Mar in which Debra and the children were living at the time of trial.  Thomas bought this property before he and Debra married.  He quitclaimed the property to a trust in both their names jointly in 2003.[2]  The parties stipulated as to its value at trial, which was less than the debt on it by about $25,000.  The marital balance sheet submitted at trial by Thomas' expert listed the value of his separate property interest in the townhouse at $263,250.

The case was tried over five days in March and June 2012.  The court entered a judgment in August 2012 which provided, as pertinent to this appeal, as follows:

1.  The townhouse was to be sold.

2.  Thomas was to pay Debra $7,500 per month in temporary child and spousal support until further order of the court.  The court would determine the level of permanent support after the sale of the townhouse.

3.  The court reserved jurisdiction to determine the division of the UBS debt.

## DISCUSSION

Thomas has identified seven issues on appeal, which can be grouped into two main categories:  those relating to the townhouse and those relating to the UBS loan.  As to the townhouse, Thomas asserts that the court should not have ordered it to be sold, because, under Family Code section 3801, Thomas had the financial wherewithal to pay

---

[2]     Thomas and Debra rented this property during their marriage and lived in a house in Newport Coast.   Debra and the children moved into the townhouse in August 2011.  The Newport Coast house went on the market, and Thomas moved into an apartment.  The house was sold (at a loss) just before trial.

3

the taxes, the mortgages, and other related expenses. Instead, the court should have awarded the property to Thomas. In addition, the court ignored both Thomas' separate property reimbursement right under Family Code section 2640 for the townhouse's value at the time it became community property and his separate property reimbursement right for payments made on the townhouse's expenses after judgment. The trial court also erred by postponing its determination of permanent spousal support until the property was sold. As to the UBS loan, the court did not divide the debt equally between Thomas and Debra, and the judgment did not explicitly state that his phantom income would not be considered when it came time to calculate permanent support.

Before we address these issues, however, we must deal with a preliminary one, our role on appeal. In family law, judges are afforded wide discretion to fashion appropriate solutions to problems of support and equal property division. (*In re Marriage of Lim & Carrasco* (2013) 214 Cal.App.4th 768, 773 [temporary spousal support]; *In re Marriage of Campi* (2013) 212 Cal.App.4th 1565, 1572 [division of community property].) We review these solutions for abuse of discretion, and if substantial evidence supports them, we affirm. (*In re Marriage of Duncan* (2001) 90 Cal.App.4th 617, 632.) As we do in other kinds of appeals, we review questions of law de novo. (*In re Marriage of Bodo* (2011) 198 Cal.App.4th 373, 384.)

Ordinarily, the judgment of a lower court is presumed correct, and a reviewing court indulges all intendments and presumptions in favor of its correctness. A party can avoid application of these inferences by following the procedure set forth in Code of Civil Procedure sections 632 and 634, that is, by requesting a statement of decision and, if dissatisfied with the statement, objecting to it in the ways provided in Code of Civil Procedure section 634. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.)

Thomas claims he filed a request for a statement of decision, and he refers us to an attachment to his response to Debra's petition for dissolution, filed June 9, 2011:

4

"Pursuant to Code of Civil Procedure Section 632 and California Rules of Court, Rule 3.1590, Respondent hereby requests a Statement of Decision with respect to any contested issue submitted to the Court for determination in the within proceeding. Respondent respectfully requests that, with respect to any issue submitted to the Court for determination, the Court include in the Statement of Decision, any and all calculations upon which the determination of any issue was made, including but not limited to, issues of spousal support, child support, property valuation, property division, tax consequences and attorneys' fees."

Code of Civil Procedure section 632 provides in pertinent part: "The court shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial upon the request of any party appearing at the trial. The request must be made within 10 days after the court announces a tentative decision unless the trial is concluded within one calendar day or in less than eight hours over more than one day in which event the request must be made prior to the submission of the matter for decision. The request for a statement of decision shall specify those controverted issues as to which the party is requesting a statement of decision. After a party has requested the statement, any party may make proposals as to the content of the statement of decision." (See also Cal. Rules of Court, rule 3.1590(d).)

Thomas' request for a statement of decision did not conform to the requirements of Code of Civil Procedure section 632. A "statement of decision calls on the trial court to act. Such a request cannot reasonably be deemed accomplished until the court knows what is requested." (*Staten v. Heale* (1997) 57 Cal.App.4th 1084, 1091; see also *In re Marriage of Arceneaux, supra*, 51 Cal.3d at p. 1134, ["[F]irst, a party must request a statement of decision as to specific issues to obtain an explanation of the trial court's tentative decision."].)

Thomas did not request a statement of decision within 10 days after the trial court announced its tentative decision. Nor did his generic request, attached to the end of

5

his response (filed long before trial even commenced) specify the controverted issues that the statement of decision was supposed to address. Moreover, although he moved for a new trial, the new trial motion did not bring any omission or ambiguity in a statement of decision to the trial court's attention, as required by Code of Civil Procedure section 634; there was no statement of decision because none had been properly requested. We therefore indulge all intendments and presumptions in favor of the trial court's judgment. (See *In re Marriage of Arceneaux, supra,* 51 Cal.3d at p. 1133.)

**I.        The Townhouse**

   **A.  The Sale Order**

   Thomas objects to the portion of the judgment ordering the sale of the Corona del Mar townhouse. Both parties stipulated to the fair market value of the property – $1,210,000 – and they stipulated to the total amount of debt on the townhouse – $1,234, 961.[3] The property is thus under water by approximately $25,000.

   There can be no question as to a trial court's authority to order the sale of community property assets in order to effect the equal division of the community estate mandated by Family Code section 2550.[4] (See *In re Marriage of Cream* (1993) 13 Cal.App.4th 81, 89 [decided under Civ. Code § 4800]; *In re Marriage of Davis* (1977) 68

---

[3]        The parties stipulated as to the value of the townhouse toward the end of the trial for purposes of finalizing a marital balance sheet for the court. Before the parties stipulated, however, a jointly hired appraiser had assigned different values to the property. The first appraisal came in at $1.3 million, which meant there was some equity in the property. The appraiser then changed his mind and valued the property at either $975,000 or $1 million. Taking the lower figure would result in the property being $260,000 underwater.

        Thomas appears to be backpedaling on the stipulation. In his opening brief, he argues that the actual fair market value of the property is really under $1 million. He does not appear to notice what this position does to his contention that the property should have been awarded to him because he could refinance it.

[4]        As the court stated, "If I don't have confidence in the appraisal . . . particularly as and for real estate, I sell things and that way I am very confident that I'm treating each side fairly, because I'm dividing dollars. . . . [¶] . . . [¶] . . . If at the end I'm not convinced that I know what that property is worth, I know how to find out. I'll sell it." "[Awarding the home to one party] would be an unequal distribution of the estate and in violation of Family Code section 2550."

Cal.App.3d 294, 306-307 [same]; *In re Marriage of Holmgren* (1976) 60 Cal.App.3d 869, 873 [same].) Substantial evidence supported this decision, including the substantially different values the real estate appraiser assigned to the property.

Thomas argues that the townhouse should have been awarded to him, because otherwise the parties would have to absorb a loss, borrowing money or cashing out retirement plans to pay off the debt after the property is sold. He also claims he could refinance the townhouse and giving it to him would relieve Debra of her obligations on the mortgage and the line of credit. Finally, he faults the trial court for considering the effect on the children of having one parent installed in a familiar environment while the other is living in a newly acquired apartment.

None of these arguments gives sufficient grounds for finding an abuse of discretion. It is impossible to know what price the townhouse would command, so Thomas' contention that the parties would have to make up a shortfall is speculation, as is the source of the money to make it up if there was one. Thomas presented no evidence at trial that he could refinance the property, and the trial court remarked in passing only that he *might* be able to do so, not that he definitely could.[5] While it is gallant of Thomas to wish to relieve Debra of her obligations on the debt, awarding the townhouse to him would also relieve her of her share of an asset in a real estate market that is, in some areas at least, recovering. And although the trial court was clearly concerned about non-economic aspects of awarding the townhouse to one or the other parent, Thomas has not presented us with any authority suggesting that such considerations are improper or an abuse of discretion.

The stipulation into which the parties entered as to the value of the townhouse applied to the division of marital assets. In the context of selling the property, however, the stipulation is irrelevant. The parties could not stipulate as to what the buyer

---

[5] The court also said, "I suspect neither one of you will be able to afford this house given the leftovers after paying support and receiving support. . . "

7

of the townhouse would pay for it.  After the townhouse sells and the debts are paid off, the court can determine, first, whether there is anything left to divide and then who gets what.  The court was clearly well within the bounds of its discretion when it adopted this procedure.

### B.  Economic Feasibility

Thomas contends the court should have awarded him the house because he met the "feasibility standard" of Family Code section 3801 and Debra did not.[6]  Family Code section 3801 deals with an order deferring the sale of a home.  No such order was entered in this case.  Family Code section 3801 does not apply.

### C.  Thomas' Right to Separate Property Reimbursement

Thomas makes two contentions with respect to separate property reimbursement.  First, he should be reimbursed for the value of the townhouse at the time it became community property if there is anything left over after the property is sold.  Second, he should be reimbursed for the postjudgment payments he has made on the property's debt, insurance, and taxes.[7]  We address each contention in turn.

### 1.  Separate Property Contribution Reimbursement

Family Code section 2640, subdivision (b), provides:  "In the division of the community estate under this division, unless a party has made a written waiver of the right to reimbursement or has signed a writing that has the effect of a waiver, the party shall be reimbursed for the party's contributions to the acquisition of property of the community property estate to the extent the party traces the contributions to a separate property source.  The amount reimbursed shall be without interest or adjustment for change in monetary values and may not exceed the net value of the property at the time of the division."  Separate property contributions are reimbursed before dividing up the

---

[6]  In his reply brief, Thomas retreated from this position, claiming that the references to Family Code section 3801 were merely illustrative.

[7]  Thomas also relies on these contentions as further supporting the award of the property to him.

8

community's assets. (*In re Marriage of Walrath* (1998) 17 Cal.4th 907, 913.) The value of the separate property at the time of its contribution determines the amount of the reimbursement. (*In re Marriage of Weaver* (2005) 127 Cal.App.4th 858, 866.)

With respect to his reimbursement for the value of the property when it was converted, the amount of this reimbursement would await the sale of the property. If the parties managed to sell it for more than the debt, Thomas would theoretically be entitled to take his reimbursement "off the top," up to the net value of the property at the time of division.

There is, however, a problem with computing the value of Thomas' separate property contribution. He presented no evidence of this amount at trial. Thomas' expert put a number on the marital balance sheet he submitted to the court on Thomas' behalf, but the source of the number is a mystery.[8] His expert was not engaged to do a real estate valuation, and Thomas himself did not testify about the value of the property in 2003.[9]

Accordingly, Thomas did not carry his burden at trial of establishing the amount of his separate property contribution. (See *In re Marriage of Geraci* (2006) 144 Cal.App.4th 1278, 1287-1288.) There is, therefore, no evidence to establish Thomas' right to reimbursement for his separate property contribution of the townhouse. (See *In re Marriage of Braud* (1996) 45 Cal.App.4th 797, 824-825 [evidence inadequate to support separate property source of funds; award reversed]; see also *In re Marriage of*

---

[8] The expert testified on direct examination, "I previously traced a separate property component of $263,250 to – as being due to [Thomas'] separate property, but because it's under water, the negative amount goes only to the community property. I've allocated that to [Thomas]." On cross-examination, he was asked, "[Y]ou have . . . $263,000, which is a number you have for what would have been [Thomas'] separate-property interest in [the townhouse] if there were – you value this property to support that?" The expert responded, "That's correct." There was some confusion about this question, and it was withdrawn shortly afterward. This is all the testimony regarding Thomas' separate property interest in the townhouse.

[9] The need for testimony on this issue was mentioned on the first day of trial. The amount contributed would be the net value, that is, minus any encumbrances. (See *In re Marriage of Rico* (1992) 10 Cal.App.4th 706, 710.) There was no testimony regarding any encumbrances on the townhouse in 2003.

*Nicholson & Sparks* (2002) 104 Cal.App.4th 289, 296, fn. 11 [inconsistent testimony and failure to produce supporting documents].)  The court did not "ignore" Thomas' separate property contribution to the townhouse.  Indulging all intendments and presumptions in favor of the judgment supports the trial court's implied ruling that Thomas did not present adequate evidence regarding the amount of his contribution.[10]

## 2.  Postjudgment Separate Property Reimbursement

The judgment ordered Thomas and Debra to each pay half of the debt, taxes, and insurance on the townhouse, pursuant to the parties' stipulation.[11]  Debra was to live there with the children until it was sold.  The court reserved jurisdiction to make any further orders necessary with respect to the property.

Thomas now argues that this aspect of the judgment does not preserve his right to reimbursement for using separate property income to pay a community property obligation.  He cites *In re Marriage of Epstein* (1979) 24 Cal.3d 76, superseded by statute on other grounds) (*Epstein*), to support his argument that he is entitled to be reimbursed for postseparation separate property payments on a community debt.  (See *id.* at pp. 84-86.)

So far as we can tell, the court has not resolved the issue of Thomas' *Epstein* credits.  The court ordered him to pay temporary support pending the sale of the townhouse and reserved the issue of permanent support for after the sale.  We find nothing in the judgment dealing with Thomas' reimbursement for paying part of the townhouse's expenses, one way or the other.  After the property is sold and the court

---

[10]    If no one requests a statement of decision after a bench trial, then the reviewing court must infer that the trial court made implied factual findings "favorable to the prevailing party on all issues necessary to support the judgment, including omitted or ambiguously resolved issues." (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 60 (*Fladeboe*).)  These include findings even "on matters as to which the record is silent . . . ." (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)  We then review the implied factual findings for substantial evidence.  (*Fladeboe*, *supra*, 150 Cal.App.4th at p. 60.)

[11]    The parties stipulated as to this division of expenses for the months of July and August 2012.  The judgment, however, did not limit payments to these two months.

determines permanent support, the parties and the court can settle up Thomas' *Epstein* credits, if any.[12]  As to this aspect of the judgment, there is nothing for us to review.

## II.            The Temporary Support Order

Thomas contends the trial court was required, as a matter of law, to order permanent spousal support and that ordering temporary spousal support instead was error as a matter of law.[13]  We review a question of law de novo.  (*In re Marriage of Bodo, supra,* 198 Cal.App.4th at p. 384.)

Thomas argues the court had to make a permanent support order because this was a final judgment.  The short answer is that the judgment was not final as to several reserved issues – not only support but also the results of the property sale and the allocation of the UBS debt.  Because the court ordered the townhouse sold, Debra had to find another residence for herself and the children.  The court accordingly held off setting the amount of permanent support until she could show what her new housing expenses would be.  The court had the authority to make an order for temporary support even after judgment was entered on some issues.  (See *See v. Superior Court* (1961) 55 Cal.2d 279, 280-281.)

Thomas' main complaint with respect to the support portion of the judgment appears to be that, after a five-day trial, he must return to court, because all issues were not resolved.  Thomas, or his counsel, would have to return to court in any event, if only after the sale of the townhouse.  This was a complex case, and we've been given no reason the court should have valued speed over careful thought and waiting to see how things played out.

---

[12]      Thomas would not be entitled to reimbursement to the extent all or part of his payments discharged his support obligations.  (*Epstein, supra,* 24 Cal.3d at p. 85.)

[13]      The judgment provides that both the spousal and child support orders are temporary only and would be revisited upon the sale of the townhouse.  The court ordered Thomas to pay Debra $3,750 per month in spousal support starting on July 15, 2012, and continuing until further order.  The court also made findings under Family Code section 4320.

11

As of the end of trial, Debra was a 55-year-old woman with minimal education and two young children.  Within a few months, she would have to find a new place to live and some way of making her own money.  She and Thomas had been living significantly above their means for at least two years, so there was going to be a substantial decrease in Debra's standard of living and in the children's as well.  The court had the authority to postpone a permanent support order until the other aspects of the property division fell into place.

**III.         The UBS Loan**

Lastly, Thomas complains that the trial court did not divide the tax liability for the UBS loan equally between himself and Debra.  He argues Debra should have been required to pay half of the taxes on the phantom income for the year 2011.

In the judgment, the trial court specifically retained jurisdiction to divide most of the debt at a later time.[14]  In other words, the court has not yet decided how to apportion the liability for this debt.  The court certainly acted within its discretion in retaining jurisdiction over this aspect of the marital estate.  When it does reopen this issue, Thomas can make his case for Debra's contribution to the 2011 tax payment.  At this point, however, the liability for the loan has not been finally adjudicated, and an appeal from this portion of the judgment is premature.

Thomas' other complaint with respect to the UBS loan is, if we have understood it correctly, that the trial court did not specifically state in the judgment that the phantom income is not to be considered income for purposes of calculating support.  He wants "appropriate language" included in the judgment to ward off "the risk that he will be charged with 'income' which he does not receive and required to pay support based on it."  Thomas does not identify the source of this "risk."  He also acknowledges

---

[14]     The court ruled that $4,387 of the debt was Thomas' sole and separate obligation.  It also determined that it would not credit Thomas for payments already made.

12

that the temporary support ordered by the trial court is based on yearly earnings that do not include the phantom income.

This court dealt with a nearly identical set of facts in *In re Marriage of Riddle* (2005) 125 Cal.App.4th 1075 (*Riddle*). In that case, as in this one, the husband was a financial advisor for a major investment firm. He too received a loan from his employer "in order to lure [him] away from his prior employer" (*id.* at p. 1078), and he too received phantom income on his monthly earning statement equal to the amount of the loan and interest being forgiven each month. (*Ibid.*) As we observed in *Riddle*, "The reason for this convoluted system of payment is fairly obvious: It allowed the employer to pay Husband big bucks up front, but spread out the payment of tax on the payment over time so as to circumvent the progressivity of the tax codes." (*Ibid.*)

Our holding on this point in *Riddle* applies to this case as well, at least as to portion of the payments attributable to child support: "[I]f the tax laws say you have income because of forgiveness-of-debt, you have income, and that forgiveness-of-debt income must go into the calculation of adjusted gross income under [Family Code] section 4058, subdivision (a), which in turn is the basis for income under [Family Code] 4059, subdivision (a). Now, there is authority . . . to ameliorate the harsh effects of assessing 'phantom' income as imputed by the tax laws under the circumstances of a given case . . ., but that doesn't mean that so-called 'phantom' income as imputed by the tax laws is any less 'income' for purposes of [Family Code] section 4058, subdivision (a)." (*Riddle, supra,* 125 Cal.App.4th at p. 1080.)

The trial court has not yet set an amount for permanent support, and we would improperly encroach on the trial court's discretion were we to tell the court how to frame the final support order. As of now, Thomas' support obligation does not take his phantom income into account, so he is not an aggrieved party. (See Code Civ. Proc., § 902.) What might happen in the future can only be dealt with in the future.

13

## DISPOSITION

To the extent that the judgment is final, it is affirmed.  Respondent is to recover her costs on appeal.



BEDSWORTH, J.

WE CONCUR:


O'LEARY, P. J.


ARONSON, J.

14