[S.F. No. 23933. Apr. 12, 1979.]

In re the Marriage of ELAYNE C. and LEON J. EPSTEIN.
LEON J. EPSTEIN, Respondent, v.
ELAYNE C. EPSTEIN, Appellant.

COUNSEL

Roy A. Sharff, Stephen Adams and Bernard N. Wolf for Appellant.

Savitt & Adams, Verna A. Adams and Nancy Sevitch for Respondent.

OPINION

**TOBRINER, J.**—In this marital dissolution proceeding both husband and wife challenge various rulings of the trial court. We state briefly our conclusions with respect to the issues raised.

■ First, we explain that although a spouse is generally not entitled to reimbursement for separate funds utilized to meet community obligations, that rule does not apply to expenditures subsequent to separation. Accordingly, husband may claim reimbursement for sums expended after separation to preserve and maintain the family residence, unless such sums were paid to fulfill husband's support obligations. The case must be remanded to the trial court for resolution of the factual questions determinative of that issue.

█ Second, the trial court ordered the family residence sold and the proceeds, after repayment to husband of reimbursable expenditures, divided in a fashion that would equalize the division of the community property. We interpret this language as permitting the court, upon the remand of this cause, to take into account the capital gains tax, if any, incurred as a result of that sale so as to equalize the division of community property after payment of that tax.

█ Third, the trial court erred in failing to require the husband to reimburse the community for community funds withdrawn by him to pay estimated taxes on his 1973 separate property income.

█ Finally, while we find no abuse of discretion in the court's order fixing spousal support at $750 per month, its order terminating that support as of April 15, 1981, in the absence of evidence that wife will be self-supporting by that date, conflicts with our recent decision in *In re Marriage of Morrison* (1978) 20 Cal.3d 437 [143 Cal.Rptr. 139, 573 P.2d 41].

1. *Summary of facts.*

The parties were married on August 8, 1954, and separated on April 15, 1972. At the time of trial wife was 48 years old and husband was 57. There were 2 children of the marriage, a daughter, over 18 years old at the time of trial and in college, and a son, age 16, residing with wife.

Wife has had no employment or job training since 1954. Before marriage she had held a temporary job as a doctor's receptionist for six months, had worked for her father for a brief period in his business, and for a wholesale firm in Los Angeles for slightly less than a year. She had a B.A. degree from the University of California, where she had majored in social work. Although she had not sought employment or job training during the two-and-one-half-year interval between separation and trial, attributing this fact to the demands of running the family home and responsibility for the children, she intended to seek job training and employment in the future.

The husband, a professor of psychiatry at University of California Medical School, also engages in part-time private practice of psychiatry. His gross income from all sources in 1973 totalled $67,000; his net income from all sources after taxes, retirement and deduction for certain health and life insurance premiums amounted to about $31,200.

After the parties separated, husband continued to provide to his wife approximately $650 every month and in addition paid utilities, telephone, department store bills, gardener, gasoline card, house insurance, house taxes, and mortgage payment. In February 1974, he modified his monthly payments, paying $950, from which wife was expected to pay the expenses husband had previously paid in addition to other incidental expenses. Throughout the pendente lite period wife and the son, David, remained in the family residence while husband made all the mortgage, insurance, and tax payments on the home. Wife maintains that because of this arrangement she never sought an order for support pendente lite.

The trial court allowed the husband reimbursement for the money spent to maintain the family residence during the separation period. It refused, however, to order the community reimbursed for community funds used by husband to pay estimated taxes on his postseparation income although that income was husband's separate property.

The court divided the community property, awarding husband community personal property worth $98,509.60 and wife community personal property worth $19,695.55. It directed sale of the family residence, valued at $140,000. It ordered the proceeds of the sale applied first to reimburse husband for traceable separate funds used to maintain that asset, with the balance "divided between the parties in a fashion which will equalize the division of the parties' community property."

Finally, the trial court awarded spousal support to wife in the amount of $750 per month, retroactive to January 1, 1975, and continuing through April 14, 1981. The order provided that spousal support would terminate on April 15, 1981, and the court would retain no further jurisdiction to award spousal support. The court also ordered husband to pay child support for the parties' son living with the wife, in the sum of $200 a month. The award of child support terminated on August 23, 1976, when the son reached the age of 18.

 2. *Husband is entitled to reimbursement for separate funds utilized to preserve and maintain the family residence unless paid to discharge his duty of support.*

Our decision in *See* v. *See* (1966) 64 Cal.2d 778 [51 Cal.Rptr. 888, 415 P.2d 776] established a presumption that, unless an agreement between the parties specifies that the contributing party be reimbursed, a party who utilizes his separate property for community purposes intends a gift to the community. Thus we said in *See,* "The basic rule is that the party who uses his separate property for community purposes is entitled to

reimbursement from the community or separate property of the other only if there is an agreement between the parties to that effect." (64 Cal.2d at p. 785; *Weinberg* v. *Weinberg* (1967) 67 Cal.2d 557, 570 [63 Cal.Rptr. 13, 432 P.2d 709].)

This court, however, has not previously addressed the applicability of this no-reimbursement rule to the situation in which, after separating, the party uses his separate property for payments on preexisting community obligations. Upon examination we think the no-reimbursement rule in *See* does not apply in such a situation.

Justification for the *See* presumption lies in the natural characteristics and legal incidents of the marital relationship. The strength of "the natural feelings of mutual affection and generosity presumably attending the marital state" (*In re Marriage of Smith* (1978) 79 Cal.App.3d 725, 746 [145 Cal.Rptr. 205]) may alone provide a basis for the inference that expenditures of separate property in behalf of the community are intended as gifts.

The legal incidents of marriage, however, provide an additional basis for such an inference. ■ Husband and wife assume a mutual obligation of support upon marriage. (See Civ. Code, § 5100.) This obligation is not conditioned on the existence of community property or income. In fact, upon exhaustion of the community property or income a spouse must utilize his or her separate property to provide for the support of the other. (Civ. Code, §§ 242, 5132.) As we noted in *See* v. *See, supra,* 64 Cal.2d 778, 784, no statutory right mandates reimbursement for such expenditures.

Similarly, we held that if a husband during marriage elects to utilize his *separate property* instead of community property to meet community expenses he may not claim reimbursement. The absence of a statutory right to reimbursement together with basic equity considerations[1] led us to conclude that the husband acts with a donative intent that transmutes his separate property into community property. (*See* v. *See, supra,* 64 Cal.2d at p. 785.)

The recent Court of Appeal opinion in *In re Marriage of Smith, supra,* 79 Cal.3d 725, however, held that the no-reimbursement rule of *See* v.

---

[1]At the time of our decision husband had both management and control of the community property (former Civ. Code, § 172) as well as the right to select the mode of living (former Civ. Code, § 156). It was considered inequitable to allow the husband to burden the community assets by consistently living beyond the means of the community.

*See* did not apply to payments made after the spouses have separated. Upon consideration of that matter, we agree with the conclusion of *In re Marriage of Smith,* and adopt as the view of this court the following portion of the Court of Appeal opinion of Justice Kaufman:

"The rule denying reimbursement in the absence of an agreement therefor is based largely on the presumption the paying spouse intended a gift. (See *See* v. *See, supra,* 64 Cal.2d at p. 785; cf. *Dunn* v. *Mullan,* 211 Cal. 583; 589-590 [296 P. 604, 77 A.L.R. 1015]; *Ives* v. *Connacher, supra,* 162 Cal. at p. 177.) . . . When the parties have separated in anticipation of dissolution of the marriage, the rational basis for presuming an intention on the part of the paying spouse to make a gift is gone.

"Moreover, the practical realities are that almost all married couples have incurred debts which are customarily paid out of their earnings and that, upon separation of the parties, their earnings, the usual, and perhaps only, liquid community asset available for payment of debts, become their respective separate property (Civ. Code, § 5118). . . . [W]hen after separation, one of the spouses makes payments on preexisting community debts out of earnings or other separate funds, if the no-reimbursement rule is applied, the result is that community obligations which would otherwise be charged against community property and borne by the parties equally are charged exclusively to the paying spouse. Thus, application of the no-reimbursement rule will discourage payment of community debts after separation, exacerbate the financial and emotional disruption which all too frequently accompanies the breakup of a marriage and, perhaps, result in impairing the credit reputations of both spouses.

"So, we are persuaded the rule disallowing reimbursement in the absence of an agreement for reimbursement should not apply and that, as a general rule, a spouse who, after separation of the parties, uses earnings or other separate funds to pay preexisting community obligations should be reimbursed therefor out of the community property upon dissolution. However, there are a number of situations in which reimbursement is inappropriate, so reimbursement should not be ordered automatically.

"Reimbursement should not be ordered if payment was made under circumstances in which it would have been unreasonable to expect reimbursement, for example, where there was an agreement between the parties the payment would not be reimbursed or where the paying spouse truly intended the payment to constitute a gift or, generally, where the

payment was made on account of a debt for the acquisition or preservation of an asset the paying spouse was using and the amount paid was not substantially in excess of the value of the use.

"Likewise, reimbursement should not be ordered where the payment on account of a preexisting community obligation constituted in reality a discharge of the paying spouse's duty to support the other spouse or a dependent child of the parties. Both spouses have a duty to support their dependent children. (Civ. Code, §§ 242, 4700.) Similarly, the spouses owe to each other mutual duties of support. (Civ. Code, §§ 242, 5100, 5132.) Following separation, the preferred source for payment of support is the separate property of the supporting spouse that would have been community property if the spouses were not separated. (Civ. Code, § 4805.) Payment of a debt, of course, may constitute payment of spousal or child support. (See *Gay* v. *Gay*, 146 Cal. 237, 243 [79 P. 885]; *Bushman* v. *Superior Court*, 33 Cal.App.3d 177, 181-183 [108 Cal.Rptr. 765]; *In re Hendricks*, 5 Cal.App.3d 793, 797-798 [85 Cal.Rptr. 220]; cf. Civ. Code, § 4358.) When in fact it does, reimbursement is inappropriate. (*See* v. *See, supra*, 64 Cal.2d at p. 784.)" (79 Cal.App.3d at pp. 746-748.) (Fns. omitted.)[2]

In the instant case the trial court did not determine whether husband's payments constituted in reality a discharge in part of his obligation of support. Husband, however, maintains that we need not remand the cause for a finding on this issue because under Civil Code section 5131 he owed no obligation of support.

Civil Code section 5131 provides that "A spouse is not liable for the support of the other spouse when the other spouse is living apart from the spouse by agreement unless such support is stipulated in the agreement."[3] To invoke the protection of this section, therefore, husband must prove both (a) that the spouses separated by agreement, and (b) that this agreement contained no provision for support. The trial court rendered no finding on either point, and the evidence adduced on the matter is equivocal.[4]

[2]Language contrary to these views in *In re Marriage of Fischer* (1976) 78 Cal.App.3d 556, 561-562 [146 Cal.Rptr. 384] is disapproved.

[3]Bruch, *The Legal Import of Informal Marital Separations: A Survey of California Law and a Call for Change* (1977) 65 Cal.L.Rev. 1015, 1030-1031, calls for legislative amendment of section 5131; the writer argues that the statute would more closely conform to the reasonable expectations of separated spouses if it provided that the duty of support continues after separation unless there is an agreement to the contrary.

[4]The parties testified to an "arrangement" under which husband paid mortgage, insurance, real property taxes, and other expenses. Whether this evidence is sufficient to

Because this case was tried before *In re Marriage of Smith, supra,* 79 Cal.App.3d 725, the parties did not orient their presentation of evidence to the issues which *Smith* found to be crucial to the husband's right to reimbursement, and the trial court rendered no findings on those issues. The issues thus left unresolved include the crucial question whether husband's payments for maintenance of the family home were made in discharge of his support obligation[5] which may turn on the subsidiary questions whether the parties separated "by agreement" (Civ. Code, § 5131), whether they entered into an "agreement" for support within the meaning of that section, and whether husband should be estopped, as wife claims, from denying that his payments were in discharge of his duty to support.[6] All of these are issues for the trier of fact, not matters which can be resolved by an appellate court. We therefore perceive no alternative to remanding this case to the superior court for additional findings.[7]

3. *Upon remand of this case the trial court should take into account the capital gains tax, if any, incurred by the parties as a result of the sale of the family residence.*

The trial court ordered the family residence sold and the proceeds divided between the parties, less the reimbursement to husband discussed in part 2 of this opinion, in such a manner as to equalize the division of the community property. Since husband received personal property of substantially greater value than that awarded wife, she will receive the larger share of the proceeds from the sale of the house.

---

prove an implied contract for support is an issue for the trial court. We note also a dearth of evidence on whether the parties separated "by agreement," although arguably such an agreement might be inferred from the subsequent conduct of the parties.

[5]"There occur to us several considerations pertinent to the determination whether a given payment was in reality in discharge of the paying spouse's duty to support. Where the payment was made pursuant to a court order, if the order specifies whether or not reimbursement is to be had, naturally the order will control. The advisability of including such a specification in every order for payment of debts is obvious. Where the court order does not specify whether or not reimbursement is to be had or where the payment made was not required by a court order, the determination will be made on the basis of the relevant facts and circumstances. However, two prime considerations will obviously be whether or not there was a need for spousal or child support at the time the payment was made and whether or not the payment made was in addition to reasonable support already being provided by the paying spouse either pursuant to or in the absence of a court order." (*In re Marriage of Smith, supra,* 79 Cal.App.3d at p. 748.)

[6]Wife contends that she relied on husband's payments on the family home and consequently did not seek a court order for support.

[7]We leave to the discretion of the trial court whether to reopen the proceedings for additional evidence or to render findings on the existing record.

The trial court's order does not mention the possibility that the parties might incur state and federal capital gains tax liability as a result of the sale of the residence. Noting that equalization of community property shares before taxes may result in her receiving less than half of the net value of community property remaining after payment of taxes, wife contends the trial court erred by not expressly considering tax liability in its order. We agree with wife that the court's division of community property should take account of any taxes actually paid as a result of the court-ordered sale of the residence, but explain that this result can be achieved merely by construing the trial court's order, without need to posit error by the court below.

In *In re Marriage of Fonstein* (1976) 17 Cal.3d 738 [131 Cal.Rptr. 873, 552 P.2d 1169], we held that the trial court, in assigning to husband the value of his interest in a law partnership, need not take into account the tax that might be incurred if husband at some uncertain future date sold that interest. We there declared that "Regardless of the certainty that tax liability will be incurred . . . the trial court is not required to speculate on or consider . . . tax consequences in the absence of proof that a taxable event has occurred during the marriage or *will occur in connection with the division of the community property.*" (17 Cal.3d at p. 749, fn. 5; see *Weinberg* v. *Weinberg, supra,* 67 Cal.2d 557, 566.) (Italics added.)

Unlike *Fonstein,* which involved a speculative future tax liability arising on the hypothetical sale of an asset, in the present case the taxable event, the sale of the residence, occurs as a result of the enforcement of the court's order dividing the community property. In this respect the case at bar resembles *In re Marriage of Brigden* (1978) 80 Cal.App.3d 380 [145 Cal.Rptr. 716], and *In re Marriage of Clark* (1978) 80 Cal.App.3d 417 [145 Cal.Rptr. 602]. In both cases the trial court awarded husband community property corporate stock, but ordered him to give wife a promissory note to equalize the division of community property; in fixing the value of the note, however, both trial courts failed to consider that state and federal taxing authorities would treat the property division as a sale of wife's interest in the stock and impose a capital gains tax on the proceeds of the note. On these facts the Court of Appeal in *Brigden* and *Clark* ordered the trial court to revise its award to take into account the wife's tax liability. When husband in *Clark* argued that *Fonstein* precluded consideration of the capital gains tax because the amount of the tax could not be immediately determined,[8] the Court of Appeal

---

[8] The Internal Revenue Code treats the award of the stock to husband, offset by a promissory note from him to wife, as the sale of wife's half interest in the stock, a sale

rejected his contention and directed that "in order to equalize division of the community property, [husband] should pay one-half of the capital gains tax caused by the transaction." (80 Cal.App.3d at p. 424.)

In cases such as the instant matter involving the sale of a family residence, the uncertainty concerning the amount of capital gains tax liability stems from provisions in state and federal tax law which defer liability to the extent that the proceeds from the sale are reinvested in a new residence within one year of the sale. (Rev. & Tax. Code, § 18091; Int. Rev. Code, § 1034(a).)[9] That uncertainty, however, will be resolved within a year or two of the court's decree.[10] In the present case, the amount of the tax liability may have been fixed by events pending the decision of this appeal, so the trial court, upon the remand of this case made necessary by our holding on the husband's right of reimbursement, can recognize that liability in dividing the proceeds of the sale. If not, and in similar cases arising in the future, the court can take account of tax liability by providing that the liability incurred, if any, is owed equally by both spouses. In unusual cases, it could retain jurisdiction to supervise the payment of taxes and adjust the division of the community property. (See *In re Marriage of Clark, supra,* 80 Cal.App.3d 417, 424.)

The trial court's order states simply that, following reimbursement to husband, "the balance of said sale proceeds shall be divided between the parties in a fashion which will equalize the division of the parties' community property." We do not think it necessary to interpret that order as rejecting consideration of the tax consequences of the sale, and then to brand the order so construed as erroneous. The judgment is susceptible of a construction consistent with the principles declared in this opinion. (See 4 Witkin, Cal. Procedure (2d ed. 1971) pp. 3209-3210.) We therefore construe the judgment to provide that the balance of the proceeds be divided so as to equalize the division of the community property after

which is subject to capital gains tax. Because husband undertook to pay the note in installments, the tax is spread over the years in which wife received the payments, and thus the amount of the tax turned in part on her taxable income in such years. (See discussion in *In re Marriage of Clark, supra,* 80 Cal.App.3d 417, 422 and fn. 3.)

[9]Amendments enacted subsequent to the trial of this case extended the period for reinvestment of the proceeds to 18 months.

[10]If the parties use the proceeds to purchase a new residence, the resulting deferral of the capital gains tax reduces the basis of the new residence. Depending upon future events, that reduction in basis may result in a higher tax when and if the new residence is sold. (Rev. & Tax. Code, § 18095; Int. Rev. Code, § 1034(e).) That possible future tax burden, however, is an example of the speculative and uncertain tax consequences which the trial court need not consider under *In re Marriage of Fonstein, supra,* 17 Cal.3d 738, 749.)

payment of any capital gains tax incurred upon the sale of the residence, and direct that the trial court, upon the remand of this case, so apply the judgment.

■ 4. *The community is entitled to reimbursement for community funds used to pay husband's tax liability for his separate income.*[11]

In January of 1974 husband withdrew $2,250 from a savings account at the Crocker Bank, conceded to contain only community funds, to make his quarterly estimated income tax payment on his 1973 salary. All of husband's income earned during 1973, being postseparation, was his separate property. (Civ. Code, § 5118.) Hence the entire tax obligation attributable to his 1973 earnings was his separate debt. Yet in dividing the remaining community funds held in the account the trial court deducted the $2,250 from the balance of the account on the date of separation. Husband was therefore not required to reimburse the community for the use of funds to meet his separate property obligations.

When a husband utilizes community funds to pay taxes relating to his separate property income he must reimburse the community for such sums. (*Somps* v. *Somps* (1967) 250 Cal.App.2d 328, 338 [58 Cal.Rptr. 304]; *Estate of Turner* (1939) 35 Cal.App.2d 576 [96 P.2d 363].) We conclude that the trial court erred in failing to charge husband's share of the community property for the $2,250 withdrawn from the Crocker Bank account.[12]

■ 5. *The trial court did not abuse its discretion limiting spousal support to $750 per month.*

■ "Although not unlimited, a trial court's discretion is broad in setting the amount of spousal support to be awarded upon dissolution of marriage." (*In re Marriage of Morrison, supra,* 20 Cal.3d 437, 454.) ■ Although a court may abuse its discretion if it accords to one spouse a continued standard of living significantly higher than it

---

[11]In parts 4, 5 and 6 of this opinion our decision follows the opinion prepared by Judge Sater for the Court of Appeal in this action with only minor changes in wording.

[12]We are aware of husband's contention that the $2,250 withdrawn from the Crocker account should be offset by the deposit of his unused vacation paycheck into the Gibralter savings account. Approximately two-fifths or $2,051 of this $5,000 check was husband's separate property. In dividing the funds in the Gibralter account, however, the trial court apportioned only the $13,839.12 in the account at the time of separation. Thus, the additional balance in the account at the time of trial remained husband's separate property.

accords to the other (see *In re Marriage of Andreen* (1978) 76 Cal.App.3d 667, 671-672 [143 Cal.Rptr. 94]), we cannot agree with wife's contention that the trial court here abused its discretion in failing to provide her with support sufficient to maintain her past standard of living.

The record discloses that husband's net income from his salary, after mandatory deductions and medical and life insurance premiums amounted to $2,471 a month; i.e., $29,632 per year. In 1973 he netted an additional $9,700 from his private practice but $9,000 went to pay taxes that were due because he was "under withheld" on his salary. The trial court concluded husband's overall net income amounted to $2,600 per month. He claimed expenses totaling $1,750 per month, including $350 per month to meet the cost of the parties' daughter's college education. This left an available income of $850 per month—a sum less than the $950 awarded in combined spousal and child support.

The trial court in the present case was unable to provide fully for the anticipated expenses of both parties. Husband's income is inadequate both to sustain two separate households at the standard of living previously enjoyed by the parties and to provide for the daughter's college education. We cannot say that the court abused its discretion in fairly attempting to allocate the available income to meet the financial needs of both parties.[13]

 *6. The trial court abused its discretion in terminating jurisdiction to modify support as of April 15, 1981.*

The trial court ordered spousal support to terminate on April 15, 1981, without retaining jurisdiction to award further support after that date. The trial court entered its order without the benefit of our recent decision in *In re Marriage of Morrison, supra,* 20 Cal.3d 437. In *Morrison* we determined that: "A trial court should not terminate jurisdiction to extend a future support order after a lengthy marriage, unless the record clearly indicates that the supported spouse will be able to adequately meet his or her financial needs at the time selected for termination of

---

[13]Wife maintains that husband currently has an increased ability to pay spousal support due to the availability of tax deductions for such support, the termination of child support and the reduction in his expenses because mortgage, tax and insurance payments on the family home will no longer be required. Husband in turn asserts we should evaluate wife's lack of effort to become self-supporting during the postseparation period. We hold only that the trial court did not abuse its discretion at the time of judgment. Both parties may in the future present further evidence to the trial court on a motion to modify spousal support. At such time the court should reconsider the needs, circumstances and financial status of the parties.

jurisdiction. In making its decision concerning the retention of jurisdiction, the court must rely only on the evidence in the record and the reasonable inferences to be drawn therefrom. It must not engage in speculation. If the record does not contain evidence of the supported spouse's ability to meet his or her future needs, the court should not 'burn its bridges' and fail to retain jurisdiction." (20 Cal.3d at p. 453; *In re Marriage of Stenquist* (1978) 21 Cal.3d 779, 789 [148 Cal.Rptr. 9, 582 P.2d 96].)[14]

 The record in the instant case is devoid of evidence justifying an inference that wife would be self-supporting on or after April 15, 1981. At the time of trial she was 48 years old without any specific employment opportunities available to her. Although she had earned a Bachelor of Arts degree and expressed a willingness to seek employment, she would need to undertake considerable training before she would be qualified to compete in the job market. Prior to the marriage wife had held only brief and intermittent unskilled positions.

On the basis of this record the trial court could only speculate as to wife's ability to meet her financial needs on April 15, 1981. The trial court's decision to terminate jurisdiction should be deferred until the facts demonstrate whether further support is warranted. (*In re Marriage of Stenquist, supra,* 21 Cal.3d at p. 790.) We conclude that the trial court abused its discretion in divesting itself of jurisdiction to amend spousal support after April 15, 1981.[15]

### 7. Conclusion.

The portion of the trial court order granting husband reimbursement for traceable funds he has expended during the period of the parties'

---

[14]We cannot accept husband's contention that an award of support beyond his mandatory retirement date (July 1, 1984) would conflict with the equal division of community property requirement of Civil Code section 4800, subdivision (a). The trial court's order terminates spousal support almost three years prior to the date of husband's retirement. Moreover, even if a future award of spousal support must come from husband's half of the community property there is no requirement excluding such property as a source of that support. As the Court of Appeal below noted, "in every case where one spouse receives permanent spousal support from the other spouse, the source is from the separate property of the paying spouse, including . . . earnings or property which were once the community property of both spouses." Husband's financial position may be reexamined if necessary at the time of his retirement in light of both parties' circumstances.

[15]We hold only that the trial court erred in divesting itself of jurisdiction to award spousal support after April 15, 1981. The portion of the award terminating spousal support as of April 15, 1981, remains valid, but the trial court must retain jurisdiction to modify that award if economic circumstances warrant.

separation to preserve and maintain the family home is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion. The portion of the trial court order terminating jurisdiction to award spousal support commencing April 15, 1981, is reversed. The portion of the trial court order dividing the community property is reversed to the extent that it fails to provide for reimbursement to the community for community funds used by husband to pay his separate tax liability. Interpreting the portion of the order directing sale of the family residence and division of the proceeds to require an equal division of community property after payment of any capital gains tax liability incurred by reason of the sale, we affirm that portion of the order, but the trial court is directed on remand of this cause to divide the community property to attain the aforementioned equal division. In all other respects the judgment is affirmed.

Bird, C. J., Mosk, J., Clark, J., Richardson, J., Manuel, J., and Newman, J., concurred.

Appellant's petition for a rehearing was denied May 17, 1979, and the opinion was modified to read as printed above.