Filed 9/25/15  Marriage of Yuan CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of JONATHAN YUAN and RACHEL YUAN. | |
| | D066980 |
| JONATHAN YUAN, | |
| Appellant, | (Super. Ct. No. DN143104) |
| v. | |
| RACHEL CLAUDE, | |
| Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, William Wood, Commissioner.  Affirmed.

Jonathan Yuan, in pro. per., for Appellant.

Law Offices of Stephen Temko, Stephen Temko and Dennis G. Temko, for Respondent.

Jonathan Yuan appeals a postjudgment family court order that awarded an omitted asset, the family home, solely to his former wife, Rachel Claude (Fam. Code, § 2556)[1]; selected an alternative valuation date for the home (§ 2552, subd. (b)); awarded her *Epstein* credits for mortgage payments and other expenses she incurred for the home (*In re Marriage of Epstein* (1979) 24 Cal.3d 76, 84-85); denied him a *Watts* charge for the rental value of the home during the period she was in exclusive possession (*In re Marriage of Watts* (1985) 171 Cal.App.3d 366, 374); and awarded her attorney fees (§ 2030). Yuan appears in propria persona, and because of significant deficiencies in his briefing and his failure to provide us with a reporter's transcript or other competent statement of the evidence adduced at the hearing, we are unable to address the merits of the court's ruling. Accordingly, we affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

In 1994, Yuan and Claude married. She lived in China until he brought her to the United States, and English is not her native language. The parties have one child together, a daughter born in 1995.

In 2005, the parties separated, and in August 2006, Yuan petitioned for dissolution of the marriage. Yuan was presumably familiar with dissolution procedures, as he had been married "multiple times" in California before marrying Claude. The petition denied there were any assets or debts subject to court disposition. Likewise, in a request for entry of default, Yuan represented there were no community assets or debts subject to

---

[1]     Further statutory references are to the Family Code.

court disposition. He submitted a declaration that stated child support and child custody and visitation should be ordered as set forth in a proposed judgment.

A default was entered by the court clerk. On November 30, 2006, the court entered a judgment of dissolution, specifying the parties would have single status on March 2, 2007. The judgment granted the parties joint legal custody of their daughter, with physical custody and visitation at Rachel's discretion. It ordered Yuan to pay $470 in monthly child support when the daughter lived with Rachel, and ordered Rachel to pay $400 per month when the daughter lived with Yuan. The judgment notes "[t]here are no . . . assets or debts subject to disposition by the court."

In August 2008, Claude filed a motion for modification, seeking the adjudication of omitted assets, including the family home. Claude's declaration noted her difficulty with the English language, and stated: "None of the community property was divided at the time of the dissolution. [Yuan] did give me a payment for my share of an IRA but I never saw the paperwork. We never divided any of the stock in TD Ameritrade. We never divided the mobile home that we bought during the marriage. He is living in the mobile home. I still live in the marital residence located [in] San Marcos. . . . I have been paying for the mortgage, taxes and insurance on this property." According to Claude, Yuan never disclosed his finances to her.

Yuan opposed the motion. He claimed that all community assets were divided long before the dissolution, with the exception of the family home, which Claude had agreed to sell. At some point, the court denied the motion.[2]

Even though he opposed Claude's motion, in December 2012, Yuan moved for disposition of the family home. He requested that the home be put on the market in six weeks "and thereafter sold in 6 months when either party decides to sell it, with the other party being allowed to buy out at then-appraised price." He also requested one-half "of the monthly market-rate rents" for the period Claude was in exclusive possession, offset by her payment of the mortgage, property taxes and insurance. He explained the home was omitted from his petition because it "was already on the market for sale before the judgment," but Claude reconsidered and decided to live "in the house indefinitely and to find roommates and collect rents."

Claude opposed the motion, and after an August 2013 hearing, the court denied it. The court determined it lacked jurisdiction to address omitted assets because "box 7h on the original petition was not checked." The court advised that either party could file an amended petition with the box checked. Box 7h lists "Property rights be determined" as an issue in the proceeding.

---

2     It is unclear whether the order on Claude's August 2008 motion is in the appellate record. The clerk's transcript includes an order dated January 21, 2009, which denied her any relief. Claude advises that this order pertains to an October 2008 motion she brought to set aside the judgment. Claude, however, mistakenly states the date of the order is January 21, *2008.* In a 2014 pleading, Claude indicated the court heard her motion for disposition of the home in January 2009.

An amended petition was presumably filed, because another hearing on the matter was held in August 2014. Claude continued to oppose Yuan's motion. She denied ever intending to sell the family home, because "I had sole custody of our daughter and it was important that we could remain in the house." She argued there was good cause not to divide the property equally based on Yuan's unclean hands in omitting the asset from the dissolution, and opposing her 2008 motion, and because she "has had the burden of paying all of the expenses (mortgage, property taxes and maintenance) while [he] contributed nothing. He got to keep his money and save it while she was burdened with paying all the costs." Claude argued that if the court determined Yuan had an interest in the home, she was entitled to *Epstein* credits.[3] Further, she requested an alternative valuation date of August 2008 or January 2009 "which is that date I requested that this court adjudicate omitted assets."

---

3    " 'Where one spouse has the exclusive use of a community asset during the period between separation and trial, that spouse may be required to compensate the community for the reasonable value of that use.' [Citation.] That right to such compensation is commonly known as a '*Watts* charge.' [Citation.] Where the *Watts* rule applies, the court is 'obligated either to order reimbursement to the community or to offer an explanation for not doing so.' [Citation.] But 'where the asset is not owned by the community but is being financed,' the spouse in possession 'may satisfy the duty to compensate the community for use of the asset by making the monthly finance payments from his or her separate property.' [Citation.] Such offsets are commonly called '*Epstein* credits.' [Citation.] [¶] The trial court determines what is due the community 'after taking into account all the circumstances' relevant to the exclusive possession by one spouse." (*In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 978-979; *In re Marriage of Epstein, supra*, 24 Cal.3d at pp. 84-85; *In re Marriage of Watts, supra*, 171 Cal.App.3d at p. 374.)

Both parties testified at the hearing, but the appellate record does not include a reporter's transcript. The order from the hearing does not indicate a court reporter was present. At oral argument on appeal, Yuan represented that the trial court did not provide a reporter and he did not retain one. He conceded he did not ask the court to issue a settled statement.

The court's order states it determined the family home was community property; a valuation date of January 1, 2009, applied; as of that date, the value of the home was $385,000, and the equity was $221,879.65; and Claude had "paid all the mortgage payments, property taxes, insurance and maintenance costs from approximately August 2006 through the present date," and thus she was entitled to *Epstein* credits of $147,184.73. The court denied Yuan's request for a *Watts* charge.

The court also found good cause for an unequal division of the property under section 2556, and awarded the home to Claude as her separate property. The court noted that by omitting the home from the petition and default judgment documents, Yuan "misrepresented the true facts regarding community assets and debts to the court." Further, in 2008, Claude filed a "proper motion" to adjudicate omitted assets, including the home, and Yuan opposed the motion. The court also noted that even without an unequal division, Yuan would receive little or no equity in the property because of Claude's *Epstein* credits.

Additionally, the court determined a mobile home purchased during the marriage was Yuan's separate property; a 2006 federal tax return of $4,030 was community property, and Yuan owed one-half of that amount to Claude, with interest; and a 2000 tax

6

debt was Yuan's separate obligation. The court denied Claude's request for sanctions, but it ordered Yuan to pay $15,992 directly to her attorney for his fees.

In September 2014, Yuan filed a motion to set aside the court's order. The court denied the motion, explaining Yuan did not properly serve Claude with it, and he provided no legal basis for any relief. The court ordered Yuan to contribute another $1,600 to Claude's attorney fees.

DISCUSSION

I

Yuan represents himself on appeal, as he did at the trial court, and there are numerous deficiencies in his briefing. " 'When a litigant is appearing in propria persona, he is entitled to the same, but no greater, consideration than other litigants and attorneys. . . . Further, the in propria persona litigant is held to the same restrictive rules of procedure as an attorney.' " (*Bianco v. California Highway Patrol* (1994) 24 Cal.App.4th 1113, 1125-1126; *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1245-1246.)

Yuan purports to challenge the court's factual findings, but his opening brief does not present cogent arguments. "[T]o demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis . . . ." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286-287.) Coherent arguments are required "to 'lighten the labors of the appellate [courts].' " (*In re Marriage of Falcone & Fyke, supra*, 203 Cal.App.4th at p. 1004.)

The opening brief also lacks any discussion of the applicable standard of review. "As in every appellate matter, the threshold issue here is the proper standard of review."

7

(*Clothesrigger, Inc. v. GTE Corp.* (1987) 191 Cal.App.3d 605, 611.) " '[A] standard of review prescribes the degree of deference given by the reviewing court to the actions or decisions under review.' " (*San Francisco Fire Fighters Local 798 v. City and County of San Francisco* (2006) 38 Cal.4th 653, 667.) " 'Arguments should be tailored according to the applicable standard of appellate review.' [Citation.] Failure to acknowledge the proper scope of review is a concession of lack of merit." (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 465.)

Further, Yuan's briefing largely omits citations to the record (Cal. Rules of Court, rule 8.204(a)(1)(C))[4], and with scant exception it fails to cite legal authority suggesting any infirmity with the court's findings (rule 8.204 (a)(1)(B) [legal authority required when possible]). "Rather than scour the record unguided, we may decide that the appellant has waived a point urged on appeal when it is not supported by accurate citations to the record. [Citations.] Similarly, we may disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt." (*City of Santa Maria v. Adam, supra*, 211 Cal.App.4th at p. 287.)

We conclude Yuan's briefing constitutes a forfeiture of appellate review. " 'The reviewing court is not required to make an independent, unassisted study of the record in search of error or grounds to support the judgment.' " (*Horowitz v. Noble* (1978) 79 Cal.App.3d 120, 139.)

---

[4]     Further rule references are to the California Rules of Court.

Further, even if Yuan's briefing was acceptable, his appeal is defeated by his failure to provide us with a reporter's transcript from the hearing or any other competent statement of the evidence. "It is well settled, of course, that a party challenging a judgment has the burden of showing reversible error by an adequate record." (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574.) "In lieu of a reporter's transcript, an appellant may submit an agreed or settled statement." (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 186; Rules 8.134 & 8.137.) Yuan concedes no court reporter attended the hearing, and he obtained no statement of the evidence.

When the record consists only of documents from the clerk's transcript, as here, it is "treat[ed] . . . as an appeal on the judgment roll." (*Allen v. Toten* (1985) 172 Cal.App.3d 1079, 1082.) In such cases, review is limited to determining whether any error "appears on the face of the record." (*Nat'l. Secretarial Serv. v. Froehlich* (1989) 210 Cal.App.3d 510, 521; Rule 8.163.)

"It is axiomatic in appellate review that a judgment of a lower court is presumed correct. [Citations.] This presumption has special significance when, as in the present case, the appeal is based upon the clerk's transcript. 'It is elementary and fundamental that on a clerk's transcript appeal the appellate court must conclusively presume that the evidence is ample to sustain the findings, and that the only questions presented are as to the sufficiency of the pleadings and whether the findings support the judgment.' " (*Ehrler v. Ehrler* (1981) 126 Cal.App.3d 147, 154.)

Here, no error appears on the face of the record, and all potential issues arising from the court's order are evidentiary in nature. As to the family home, the court has continuing jurisdiction to adjudicate an asset omitted from a dissolution judgment. (§ 2556.) The court must divide the asset equally, unless it "finds upon good cause . . . that the interests of justice require an unequal division." (*Ibid.*) We review "good cause" and "interests of justice" findings for abuse of discretion. (*In re Marriage of Leonard* (2004) 119 Cal.App.4th 546, 563; *In re Marriage of De Prieto* (2002) 104 Cal.App.4th 748, 754.)

Further, although community assets are generally valued "as near as practicable to the time of trial" (§ 2552, subd. (a)), the court may "for good cause shown" select a different valuation date (§ 2552, subd. (b)). "As long as the court exercises its discretion in a legal manner, its decision will be affirmed on appeal if there is substantial evidence to support it." (*In re Marriage of Campi* (2013) 212 Cal.App.4th 1565, 1572.) The court is also vested with discretion to order *Epstein* credits and/or a *Watts* charge if equitable on the facts of the case before it. (*In re Marriage of Watts, supra*, 171 Cal.App.3d at p. 374 ["[t]hat determination should be made after taking into account all the circumstances].") Additionally, the court has discretion to award attorney fees in a family law proceeding. (§ 2030.)

The absence of a reporter's transcript or agreed or settled statement precludes Yuan from challenging the court's conclusion on these issues. (*Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 132; *Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 448 ["The absence of a record concerning what actually

10

occurred at the trial precludes a determination that the trial court abused its discretion."];
*Ehman v. Moore* (1963) 221 Cal.App.2d 460, 462 [failure to secure reporter's transcript or settled statement].) The parties both testified at the hearing, but we cannot review the testimony or assess the state of the evidence. Perhaps Claude testified convincingly that Yuan agreed to her exclusive use of the home, at least during the minority of their daughter, without any payment of rental value to the community.[5] We may not accept Yuan's version of events without any proof. "It is settled that a ground for reversal which is based upon facts outside the record is not available on appeal. [Citations.] Matter which does not appear in the record may not be considered by an appellate court upon the suggestion of [the parties] in their briefs." (*Ehman, supra*, 221 Cal.App.2d at p. 463.) Without a sufficient record, the judge who presided over the matter is "the best judge of what occurred in his [or her] courtroom." (*Vo, supra*, at p. 447.)[6]

---

[5] The party requesting a *Watts* charge has the burden of proof, and we note the court's order states Yuan submitted no evidence, i.e., of the rental value of the family home. On appeal, he cites Claude's Exhibit L, a Zillow.com printout suggesting rental value, but the court excluded that exhibit.

[6] Additionally, Yuan's attempt to raise a child support issue is untimely, as the clerk's transcript indicates the issue was last addressed in 2009. The September 2014 order from which he appeals does not pertain to child support.

11

## DISPOSITION

The order is affirmed.  Claude is entitled to costs on appeal.


HALLER, J.

WE CONCUR:


NARES, Acting P. J.


IRION, J.