Filed 1/17/23  Marriage of Brown and Chenoweth-Brown CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| In re the Marriage of DAVID BROWN and VALERIE CHENOWETH-BROWN. | C094007 |
| DAVID BROWN,<br><br>Appellant,<br><br>v.<br><br>VALERIE CHENOWETH-BROWN,<br><br>Respondent. | (Super. Ct. No. SDR0053507) |

David Brown appeals from the trial court's judgment on reserved issues following the dissolution of his 25-year marriage to Valerie Chenoweth Brown.[1]  He argues: (1) the

---

[1] David is identified as "David Brown" in the trial court's statement of decision and judgment.  He is variously identified as "David M. Brown (Reid)," "David Marc Brown (Reid)," " David Reid (Brown)" and "David Marc Reid (Brown)" in filings with the trial court.  For convenience, we will refer to the parties by their first names.

1

trial court erred in awarding an *Epstein*[2] credit to Valerie for expenses incurred in visiting two of the parties' three children at a therapeutic boarding school in Utah (school); (2) the trial court erred in awarding Valerie an *Epstein* credit for payments made towards a loan on a life insurance policy; (3) the trial court erred in valuing four life insurance policies; and (4) the trial court erred in failing to consider David's request for an *Epstein* credit for payments made after the date of separation for income taxes and Valerie's car payment. We affirm, in part, and reverse, in part.

## I. BACKGROUND

David and Valerie married in March 1991. They have three children, some or all of whom are adopted.[3] David and Valerie separated in October 2016, when the children were minors. David filed a petition to dissolve the marriage in January 2018.

The trial court held a trial on reserved issues in June 2020. Among the issues were: (1) Valerie's request for reimbursement of expenses incurred in connection with her travel to the school; (2) Valerie's request for reimbursement for amounts paid on a loan against a life insurance policy (policy no. 7878); and (3) the net value of four life insurance policies (policy nos. 1570, 1997, 7878, and 9396). David represented himself at trial.

The trial court filed a statement of decision on August 25, 2020. The record does not disclose whether a proposed statement of decision was filed or served on the parties, and if so, when. (Cal. Rules of Court, rule 3.1590(g).)[4] David filed a "memo to the

---

[2] *In re Marriage of Epstein* (1979) 24 Cal.3d 76 (*Epstein*), superseded by statute on other grounds.

[3] The trial court's statement of decision indicates all of the children are adopted; however, David says two are adopted. This inconsistency is not relevant to any issue before us.

[4] Further undesignated rule references are to the California Rules of Court.

2

court" on October 13, 2020. As relevant here, that pleading seeks a ruling on David's request for an *Epstein* credit for "community tax debt." The trial court does not appear to have responded to David's "memo."

The trial court entered judgment on the reserved issues on December 17, 2020. This appeal timely followed.

## II. DISCUSSION

### A. *State of the Record*

Our analysis begins with the state of the record. We start with the presumption that the judgment being appealed is correct, and "the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609; see also *Lincoln Fountain Villas Homeowners Assn. v. State Farm & Fire Casualty Ins. Co.* (2006) 136 Cal.App.4th 999, 1003, fn. 1 ["It is axiomatic it is the appellant's responsibility to provide an adequate record on appeal"].) " 'Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].' " (*Jameson v. Desta, supra,* at p. 609.)

David has submitted an appellant's appendix in connection with this appeal. (Rules 8.122(b)(1) & (3), 8.124(b)(1).) "The California Rules of Court require an appellant who elects to proceed by appendix to include, among other things, any document filed in the trial court which 'is necessary for proper consideration of the issues, including . . . any item that the appellant should reasonably assume the respondent will rely on.' ([][R]ule 8.124(b)(1)(B).)" (*Jade Fashion & Co., Inc. v. Harkham Industries, Inc.* (2014) 229 Cal.App.4th 635, 643.) The same rule requires that the appellant include any exhibit admitted in evidence that is necessary for proper consideration of the issues. (Rules 8.124(b)(1)(B), 8.122(b)(3)(B).) Though "all exhibits . . . are deemed part of the record" (rule 8.122(a)(3)), we do not receive any exhibits unless they are included in the clerk's transcript (rule 8.122(a)(3)) or appendix (rule

3

8.124(b)(3)), or they are transmitted to us (rule 8.224). David's appendix does not contain copies of exhibits actually admitted at trial, which have since been destroyed pursuant to Code of Civil Procedure section 1952, subdivision (c).[5]  Instead, David has given us copies of documents that became trial exhibits, including records of purported travel expenses, loan payments and payments to the Internal Revenue Service and Franchise Tax Board, and an enrollment agreement and financial contract with the school (contract).

Valerie argues that David's appendix fails to comply with the Rules of Court. (Rules 8.124(b)(1)(B), 8.122(b)(3)(B).)  She correctly observes that the documents contained within the appendix are not part of the trial court's record, as those exhibits no longer exist.  However, she does not suggest any of the documents are false or inaccurate.

By filing an appendix, counsel represent, under risk of sanctions, that the appendix "consists of accurate copies of documents in the superior court file" in the matter under review.  (Rule 8.124(g).)  Valerie has not given us any reason to doubt the representation of David's counsel herein.  Accordingly, we see no reason why we should not consider the reconstructed exhibits contained in the appendix.  (Cf. *People v. Coley* (1997) 52 Cal.App.4th 964, 970 [when original trial exhibits are unavailable, the appellate court can review reconstructed exhibits].)[6]

B.     *Epstein Credits*

Family Code section 2626 gives the trial court "jurisdiction to order reimbursement in cases it deems appropriate for debts paid after separation but before trial."  A court has broad discretion to order reimbursement to a spouse who uses separate property funds to make postseparation payments on a preexisting community obligation.

---

[5] Further undesignated statutory references are to the Code of Civil Procedure.

[6] The appendix suffers from another deficiency, however, which we will take up later.

(*Epstein, supra,* 24 Cal.3d at pp. 84-85.) Such reimbursements are commonly referred to as *Epstein* credits. (*In re Marriage of Boblitt* (2014) 223 Cal.App.4th 1004, 1010, fn. 2 ["An *Epstein* credit is the right to be reimbursed by the community for separate property funds used after separation to meet community expenses"].)

Our Supreme Court has explained: " '[A]s a general rule, a spouse who, after separation of the parties, uses earnings or other separate funds to pay preexisting community obligations should be reimbursed therefor out of the community property upon dissolution. However, there are a number of situations in which reimbursement is inappropriate, so reimbursement should not be ordered automatically. [¶] 'Reimbursement should not be ordered if payment was made under circumstances in which it would have been unreasonable to expect reimbursement, for example, where there was an agreement between the parties the payment would not be reimbursed or where the paying spouse truly intended the payment to constitute a gift or, generally, where the payment was made on account of a debt for the acquisition or preservation of an asset the paying spouse was using and the amount paid was not substantially in excess of the value of the use. [¶] Likewise, reimbursement should not be ordered where the payment on account of a preexisting community obligation constituted in reality a discharge of the paying spouse's duty to support the other spouse or a dependent child of the parties.' " (*Epstein, supra,* 24 Cal.3d at pp. 84-85.)

We review the trial court's rulings on *Epstein* credits for abuse of discretion. (*In re Marriage of Oliverez* (2019) 33 Cal.App.5th 298, 318-319.) In doing so, we do not replace the trial court's exercise of discretion with our own. We must uphold the trial court's decision if any substantial evidence supports it, without considering whether there also exists substantial evidence to support a contrary decision. (*Id.* at p. 319.)

5

*1.    Valerie's Request for Reimbursement of Expenses Incurred in Visiting School*

David argues the trial court erred in awarding Valerie an *Epstein* credit for expenses she incurred in visiting two of the children at school in Utah. In the alternative, he argues the trial court should have reduced the amount of the *Epstein* credit. We reject the first argument but accept the second.

As noted, some of the parties' children were adopted. The adopted children were entitled to benefits through the State of California Adoption Assistance Program. Among other things, the Adoption Assistance Program paid costs associated with the school, including room and board. These costs came to approximately $10,130 per month per child.

Valerie made several trips to Utah to visit the children in school, without notifying David or consulting with him. She sought reimbursement for $13,413 in travel and other school-related expenses, including amounts paid for air fare ($4,246), lodging ($2,064), car rentals ($893), fuel ($537), parking ($190), food ($2,125), and miscellaneous expenses for the children, such as clothing, books, personal hygiene and grooming, and school supplies ($3,356).

David objected to the request for reimbursement, arguing the trips were not required, but merely recommended. He relied on the contract, which was signed before the date of separation, and provides, in pertinent part: "As a part of Student's enrollment there is an expected involvement by Sponsor(s) [defined as Valerie and David] in activities such as, but not limited to, family counseling sessions. Parents are also encouraged to participate in the following activities at their own expense: Parent visits, Parent Seminars, and reunification at the time of discharge. Sponsor(s) understand(s) that if Adoptive Services withholds payment to [school] due to Sponsor(s) failure to fulfill these requirements, [school] may discharge Student from Program." The contract further provides: "Sponsor(s) further understand and agree that in the event Sponsor(s) remove

6

Student from [school] before completion of the initial 6 month enrollment period, all financial responsibility from the date of removal to the end of initial 6 month enrollment period revert [*sic*] to Sponsor(s)."

The trial court granted Valerie's request for reimbursement, noting that failure to participate in school activities could result in the withdrawal of financial support by the Adoption Assistance Program, "leaving the parents liable for approximately $10,000 per month per child for the remainder of the contract." Under the circumstances, the trial court found, "Valerie was wise" to participate in school activities in Utah, and her "participation redounded to the benefit of David."

David argues the trial court erred in awarding the *Epstein* credit because the trips to Utah were not "preexisting community obligations." (*Epstein, supra,* 24 Cal.3d at p. 84.) He notes that even Valerie's counsel acknowledged the trips were not required by the contract and observes that "[a]n expense paid for a *recommended* trip is *not* an *obligation*." We do not think the contract is quite so clearcut.

The contract obligated David and Valerie to participate in some activities (e.g., "expected involvement" in family counseling sessions), "encouraged" them to participate in others (e.g., parent visits and parent seminars), and made clear that payment could be withheld by the Adoption Assistance Program for "failure to fulfill these requirements," which could expose them to potential liability for tuition. The trial court could have reasonably believed that Valerie's travel expenses were necessary to ensure that Valerie and David were meeting their obligations to the school, whatever they may have been.[7] No abuse of discretion appears.

David argues in the alternative that the trial court erred in awarding Valerie an *Epstein* credit for all claimed expenses in visiting the school. He argues, first, that the

---

[7] Valerie testified that the school allowed parents to participate in family counseling sessions by phone or video, but this is not clear from the contract.

amounts Valerie spent on spent on miscellaneous supplies and expenses for the children ($3,356) could not be characterized as a "preexisting community obligation," even assuming the trips themselves were obligatory. We agree and will direct the trial court to reduce the *Epstein* credit by $3,356 and recalculate the equalizing payment accordingly.

David also argues the trial court erred in awarding both child support retroactive to August 1, 2018, and reimbursement for Valerie's expenses for trips to the school between August 25, 2018, and March 23, 2019, which are said to amount to $4,182. David argues the *Epstein* credit should be reduced by this amount, asserting that Valerie and her trial counsel acknowledged that she was either seeking child support for the two children enrolled in the school, or reimbursement for Valerie's expenses for trips to the school, but not both.

We have carefully reviewed the reporter's transcript and find it to be ambiguous on this point. It is true, as David says, that Valerie appears to have indicated, in response to questioning by the trial court, that she viewed her requests for child support and reimbursement for school-related expenses as an "either/or" proposition. However, Valerie's statement of issues specifically sought child support for the time the children were at school in Utah, and Valerie testified that she remained responsible for many of their expenses (even as the school provided room and board) and had sole custody over them during school breaks. Valerie's remarks also appear to have been preceded by an off-the-record conversation on the subject, about which we know nothing.

Valerie's trial counsel, for his part, suggested he had given David "options" at some earlier point in the dissolution proceedings. Specifically, Valerie's trial counsel said: "The two girls, I said, we'll take either as child support or reimbursement for those trips to the facility in Utah." Far from conceding anything, Valerie's trial counsel appears to have been suggesting that Valerie made some sort of settlement offer, which David declined. Whatever happened, we cannot say, on the record before us, that the

trial court abused its discretion in awarding Valerie an *Epstein* credit for travel expenses and child support retroactive to August 1, 2018.

      2.     *Valerie's Request for Reimbursement for Payments on Loan Against Policy No. 7878*

David argues the trial court erred in awarding Valerie an *Epstein* credit for $10,648 for amounts paid on a loan against policy no. 7878. He argues, first, that Valerie never requested any such credit. However, the trial court's statement of decision specifically says that Valerie "seeks an *Epstein* credit" for $10,648 in payments towards the loan against policy no. 7878. We decline David's invitation to second guess the statement of decision.

David next argues the *Epstein* credit erroneously included payments made before the date of separation. He directs us to a spreadsheet, apparently generated by State Farm, which purports to show that eight payments were made towards policy no. 7878 between November 27, 2006, and May 23, 2016, in the total amount of $3,834. David correctly notes that these payments were made before the date of separation and do not qualify for an *Epstein* credit. We will direct the trial court to reduce the *Epstein* credit by $3,834 and recalculate the equalizing payment accordingly.

David also argues the trial court erred in including a payment in the amount of $6,679 in the $10,648 *Epstein* credit for payments on the loan against policy no. 7878, because that payment was made with the proceeds from a loan on policy no. 9396. Thus, David says, the community property value of policy no. 9396 was borrowed to pay down the loan on policy no. 7878. The insurance records contained in the appendix support David's argument, and suggest the $6,679 payment may not have been made with Valerie's separate funds.

Valerie is entitled to reimbursement for payment of community obligations only if those payments were made from Valerie's separate property. (*In re Marriage of Prentis-Margulis & Margulis* (2011) 198 Cal.App.4th 1252, 1281.) Because no evidence

9

establishes that Valerie's postseparation payment of $6,679 for the loan against policy no. 7878 came from separate funds, we must reverse the portion of the judgment giving her an *Epstein* credit for that payment. (*Ibid.*) On remand, the trial court must limit any reimbursement to payments that Valerie proves came from separate property.

3.     *David's Request for Reimbursement for Payments Made for Community Income Taxes and Valerie's Car*

David argues the trial court erred in failing to consider his request for an *Epstein* credit for postseparation payments that he made for community income taxes and Valerie's car. This argument brings us back to the state of the record.

As noted, the trial court filed a statement of decision on August 25, 2020. The appendix does not contain a proposed statement of decision or proof of service for any proposed statement of decision. These omissions affect the scope of our review. (See Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2022) ¶¶ 16:197 to 16:205.)

"Under the doctrine of implied findings, the reviewing court must infer, following a bench trial, that the trial court impliedly made every factual finding necessary to support its decision." (*Fladeboe v. American Isuzu Motors, Inc.* (2007) 150 Cal.App.4th 42, 48.) Under section 632, upon a party's request after trial, the court must issue a statement of decision "explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial." Under section 634, if the statement of decision does not resolve a controverted issue or is ambiguous, and the omission or ambiguity was brought to the attention of the trial court, "it shall not be inferred on appeal . . . that the trial court decided in favor of the prevailing party as to those facts or on that issue." (See *Culbertson v. Cizek* (1964) 225 Cal.App.2d 451, 465-466; see also *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133-1134.)

"Together, sections 632 and 634, as implemented by rule 3.1590(d)-(g) of the California Rules of Court, establish a two-step procedure for requesting a statement of

10

decision and preserving objections for pursuit on appeal. First, following the court's announcement of its tentative decision, section 632 requires a party to specify, in timely fashion and in proper form, 'those controverted issues as to which the party is requesting a statement of decision. After a party has requested the statement, any party may make proposals as to the content of the statement of decision.' This initial step serves the function of advising the trial court of exactly what issues the parties view as materially controverted at the close of the evidence, just as the process of settling jury instructions serves to frame issues for decision by the fact finder in the jury trial setting. Second, section 634 requires that any omissions or ambiguities in the statement of decision must be 'brought to the attention of the trial court either prior to entry of judgment or in conjunction with' a new trial motion (§ 657) or a motion to vacate the judgment (§ 663), thus allowing the court to respond to objections before the taking of an appeal. The second step is not a substitute for the first. Objections are germane only as to issues framed as materially controverted under section 632." (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 982, fns. omitted.)

"For the doctrine of implied findings to be disabled on appeal, both steps of the two-step procedure under section 632 and 634 must be followed. [Citation.] Where a party fails to 'specify . . . controverted issues' or otherwise 'makes proposals as to the content' of a statement of decision under section 632 (forcing the trial court to guess at what issues remain live during preparation of the statement of decision), or where a party complies with section 632 but fails to object under section 634 (depriving the trial court of the opportunity to clarify or supplement its statement of decision before losing jurisdiction), objections to the adequacy of a statement of decision may be deemed waived on appeal. [Citation.] Because either procedural defect impedes the trial court's ability to fulfill its duty under section 632 and potentially undermines the effectiveness of any statement of decision it prepares as a tool of appellate review, strict adherence to both steps of the process is necessary before we will reverse the presumption of correctness

11

generally accorded trial court judgments on appeal." (*Thompson v. Asimos, supra,* 6 Cal.App.5th at p. 983.)

David's appendix does not show that he complied with the process described above. We have not been provided with the trial court's proposed statement of decision or proof of service for the proposed statement of decision, and thus cannot know whether he raised his request for an *Epstein* credit for amounts paid for community income taxes and Valerie's car payments in timely fashion. Even assuming the statement of decision functioned as the proposed statement of decision, and assuming further the proposed statement of decision was served on August 25, 2020, the time for objections would have expired well before David filed his "memo to court" on October 13, 2020. The appendix thus fails to show that David raised the issue as required by section 632 and rule 3.1590. It follows that David has waived the issue on appeal. (*Thompson v. Asimos, supra,* 6 Cal.App.5th at p. 983.)

C.      *Value of Life Insurance Policies*

Finally, David argues the trial court erred in valuing the parties' life insurance policies. We are not persuaded.

As noted, the parties had four life insurance policies: policy nos. 1570, 1997, 7878, and 9396. David wanted to "cash out" the policies (e.g., sell the policies), pay off the loan balances, and split any remaining proceeds. He testified that the "termination amounts" for the policies would be as follows: (1) $8,194 for policy no. 1570; (2) $7,268 for policy no. 1997; (3) $23,321 for policy no. 7878; and (4) $425 for policy no. 9396. David acknowledged that "cashing out" the policies would result in tax consequences but did not offer any evidence concerning the extent of those consequences.

Valerie wanted to have each policy awarded to the owner of the policy, such that David would receive policy nos. 1997 and 1570, and she would receive policy nos. 7878 and 9396. The owner would be assigned the associated loan liability for the policy and charged with the net cash value. The trial court received evidence that the cash value net

of loan for each policy would be as follows:  (1) $13,329 for policy no. 1570; (2) $14,351 for policy no. 1997; (3) $12,278 for policy no. 7878; and (4) $2,318 for policy no. 9396.[8]

The trial court valued the life insurance policies using cash values net of loans, rather than "termination amounts."  David argues without analysis that the trial court should have used termination amounts.  He does not explain why the trial court erred in using cash values net of loans, and we decline to develop his argument for him.

---

[8] Handwritten notations by an insurance agent on records provided by the life insurance company characterized these amounts as "taxable gains."

### III.  DISPOSITION

The judgment on reserved issues is reversed, in part, and the matter remanded to the trial court with the following instructions.  First, the trial court shall vacate that portion of the judgment requiring David to reimburse Valerie for $13,413 in expenses she incurred to visit the children in school.  The trial court shall enter a new judgment requiring David to reimburse Valerie for travel expenses only, and not expenses incurred for miscellaneous supplies, entertainment, or personal grooming for the children.  Second, the trial court shall vacate that portion of the judgment requiring David to reimburse Valerie in the amount of $10,648 for payments on the loan against policy no. 7878.  The trial court shall enter a new judgment requiring reimbursement for payments made after the date of separation, to the extent that Valerie can prove she made them from her separate funds.  In all other respects, the judgment is affirmed.  The parties shall bear their own costs on appeal.  (Rule 8.278(a)(5).)

/S/

RENNER, J.

We concur:

/S/

DUARTE, Acting P. J.

/S/

BOULWARE EURIE, J.

14